Louis Eugene BEAN, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–90–178–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 8, 1991.

Terrill L. Flenniken, Mary B. Hennessy, Houston, for appellant.

Linda A. West, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and CANNON, JJ.

## OPINION

MURPHY, Justice.

Appellant entered a plea of not guilty before the jury to the offense of aggravated robbery. He was convicted, and the jury assessed punishment, enhanced under TEX.PENAL CODE ANN. § 12.42(c) (Vernon Supp.1990), at confinement for life in the Institutional Division of the Texas Department of Criminal Justice and a fine of $10,000.00. In two points of error, appellant complains of the trial court's ruling on his *Batson* motion and statements made by the prosecutor during voir dire. We affirm.

■ In his first point of error, appellant contends that the trial court erred in denying his motion for mistrial under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Specifically, appellant asserts that his conviction should be reversed, because the state failed to present racially neutral reasons for its peremptory strikes against four venirepersons. The venire consisted of forty prospective jurors, eight of whom were black. Of those eight black venirepersons, one was struck for cause, four were peremptorily struck by the prosecutor and three were impaneled on the jury.

After the jury was impaneled, but prior to the jury being sworn, appellant made his *Batson* motion. In the course of the *Batson* hearing, the trial court judicially noticed for the record that four of the eight black venirepersons had been peremptorily struck by the state. Appellant's attorney then made the following statements:

[DEFENSE COUNSEL]: Your Honor, I would also like the record to reflect that Juror No. 1 was struck by the State, who is black. Juror No. 2, who was black, was struck by the State. Juror No. 18, who is black, was struck by the State. And Juror No. 35, who is black, was struck by the State.

And, Your Honor, I'd also request that the record reflect, if it does not, though I think that it probably does, that Juror No. 15, who was black, who was struck for cause was on motion of the State and that I objected to that motion being granted.

THE COURT: All right, sir.

[DEFENSE COUNSEL]: And with that, Your Honor, the defendant would invoke *Batson*.

No further evidence or argument was set forth by appellant in support of his *Batson* challenge.

Following the above presentation by appellant, the trial court, in an effort "[t]o simplify things, speed things up," requested the prosecutor to explain her perempto-

ry strikes. The prosecutor proceeded to provide the court with racially neutral explanations for each of her peremptory strikes against black venirepersons. Based upon these explanations and its own observations, the trial court made the following finding:

> [T]here was no systematic exclusion of any person because of any race, religion or for any other reason, that the reasons set forth for the State's peremptory challenges were justifiable, legitimate and completely not in any way based or influenced because of color.

Following a brief discussion, the trial court overruled appellant's *Batson* motion.

The state contends that this point of error should be overruled, because appellant failed to establish a prima facie case of purposeful racial discrimination in the court below. Before we address the merits of this contention, however, we must first determine whether the state, by providing explanations for its peremptory challenges, has waived its right to complain of appellant's failure to establish a prima facie case. The Court of Criminal Appeals has tangentially addressed this issue on at least two occasions. In *Dewberry v. State*, 776 S.W.2d 589, 591 n. 2 (Tex.Crim.App.1989), the court suggested that the question of whether a defendant has established a prima facie case should normally not be a concern subject to appellate review. However, the court touched on the matter more directly in *Cooper v. State*, 791 S.W.2d 80 (Tex.Crim.App.1990), which was decided six months after *Dewberry*.

In *Cooper*, the state contended that the appellant had failed to preserve his *Batson* challenge for appellate review, because he had failed to make his motion in a timely manner. *See Cooper*, 791 S.W.2d at 82. The court initially concluded that the state had waived its complaint as to the preservation of error, because it had failed to raise its objection in the trial court prior to the *Batson* hearing. *See id.* In its opinion on the state's motion for rehearing, however, the court reexamined the state's argument and determined that implicit in Tex. R.App.P. 52(a) "is the requirement that

*only* the party seeking to appeal an adverse ruling by the trial court is burdened with the obligation of interposing a timely objection to the trial court's action." *Id.* at 83. Based upon this reasoning, the court abandoned its prior conclusion and held that "[t]he fact that the trial court proceeded to conduct a *Batson* hearing is irrelevant to the issue of whether appellant actually preserved error." *Id.* In view of this holding, we conclude that the state has not waived its right to challenge the sufficiency of appellant's prima facie case in this appeal.

The state contends that appellant failed to establish a prima facie case of purposeful racial discrimination in the court below. In this regard, we first note that the burden of establishing a prima facie case is on the criminal defendant. *E.g., Tompkins v. State*, 774 S.W.2d 195, 200 (Tex.Crim.App. 1987), *aff'd by an equally divided Court*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989). Only after the defendant has established a prima facie case of discrimination does the burden of proof shift to the state to articulate racially neutral reasons for its peremptory strikes. *Dewberry v. State*, 776 S.W.2d 589, 590 n. 1 (Tex.Crim. App.1989); *see Batson v. Kentucky*, 476 U.S. 79, 97, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986).

In the aftermath of *Batson*, courts fashioned a uniform test for determining whether a defendant had established a prima facie case of purposeful racial discrimination. Under this test, a defendant was required to show that he is a member of a cognizable racial group, that the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race, *and* that these facts and other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude the venirepersons from the jury on account of their race. *E.g., Tompkins*, 774 S.W.2d at 200. Relying upon this traditional analysis, the state argues that appellant has failed to establish the first and third elements of his prima facie case.

■ Initially, we note that appellant has failed to establish that he is a member of a cognizable racial group. The record in this case fails to reveal appellant's race. The trial court did not take judicial notice of the fact, and neither the prosecutor nor appellant's counsel referenced the matter in their *Batson* arguments. The record does contain references to the sex and race of several venirepersons, but we are not at liberty to *assume* from these references that appellant is a member of a particular cognizable racial group. This is particularly true in view of the Supreme Court's holding in *Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), which was anticipated at the time of appellant's trial. Under the traditional *Batson* analysis, appellant had the burden, however slight, of establishing on the record that he was a member of a cognizable racial group, and it is evident that he failed to satisfy that burden. In view of the Supreme Court's opinion in *Powers*, however, we conclude that appellant's failure to show that he is a member of a cognizable racial group is not *per se* dispositive of the question of whether he established a prima facie case in his *Batson* challenge.

Since 1986, the substantive and procedural legal issues surrounding *Batson* challenges have been in a state of constant flux reminiscent of Hericlitus's stream. At its inception, *Batson emphasized* the necessity of racial identity between the defendant and the excluded jurors. This principle was reflected in the Court's description of the first two elements of a prima facie case:

> To establish such a case, the defendant must first show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.

*Batson v. Kentucky*, 476 U.S. 79, 96, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986) (citation omitted). Thus, when *Batson* was announced as the Law of the Land, it was necessary for a defendant to establish his race in order for him to show that other members of that particular race had been excluded from the jury. The Supreme Court has recently concluded that the necessity of racial identity emphasized in *Batson* is now "irrelevant" to a defendant's right to raise a *Batson* challenge. *See Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 1377, 113 L.Ed.2d 411 (1991).

In *Powers*, the petitioner was "a white man" who had been convicted in a state-court trial of murder, aggravated murder and attempted aggravated murder. *See* 111 S.Ct. at 1366. During the jury selection process, Powers had objected to the state's use of peremptory challenges to exclude seven black venirepersons from the jury. *Id.* His objections, which were overruled at trial, were based on *Batson* and were raised in the course of a typical *Batson* motion. *See id.* On appeal, Powers contended that his own race should have no bearing on his right to object to the state's peremptory challenges. *Id.* The Supreme Court agreed and concluded that a defendant in a criminal case can object to the race-based exclusion of jurors through peremptory challenges regardless of whether the defendant and the jurors are of the same race. *See id.* 111 S.Ct. at 1373. In reaching this conclusion, the Court held that "race is irrelevant to a defendant's standing to object to the discriminatory use of peremptory challenges." *Id.*

■ In an attempt to reconcile its holding with the express language of *Batson*, the *Powers* Court noted:

> The emphasis in *Batson* on racial identity between the defendant and the excused prospective juror is not inconsistent with our holding today.... Racial identity between the defendant and the excused person might in some cases be the explanation for the prosecution's adoption of the forbidden stereotype, and if the alleged race bias takes this form, it may provide one of the easier cases to establish both a prima facie case and a conclusive showing that wrongful discrimination has occurred.

*Id.* 111 S.Ct. at 1373–74. Regardless of whether the "emphasis" in *Batson* is inconsistent with the holding of *Powers*, the express language of the cases cannot be

reconciled. If race is "irrelevant" to a defendant's right to challenge the exclusion of jurors, courts cannot continue to require proof that a defendant is a member of a cognizable racial group as a prerequisite to a *Batson* challenge. Accordingly, we hold that appellant was not required to show that he was a member of a cognizable racial group in order to establish his prima facie case.

■ In view of this holding, we must direct our attention to whether appellant established the third element of his prima facie case, *i.e.*, whether he showed any combination of factors sufficient to raise the necessary inference of purposeful discrimination. In *Powers*, the Supreme Court noted that proof of racial identity between the defendant and the excluded venirepersons might serve in some cases to establish this element of a prima facie case. *See* 111 S.Ct. at 1373–74. It follows, that where a defendant fails to establish that he belongs to the same race as the excluded venirepersons, he cannot rely upon racial identity as a factor raising an inference of discrimination.

In his *Batson* motion, appellant reiterated the trial court's findings regarding the fact that the prosecutor had exercised four of her ten peremptory strikes to exclude black venirepersons from the jury, and then stated: "And with that, Your Honor, the defendant would invoke *Batson*." The state contends that this showing was insufficient to raise an inference of purposeful racial discrimination on the part of the prosecutor. We agree. *Batson* is not a talisman, the invocation of which automatically raises an inference of racial discrimination. It is, at best, a clumsy procedural mechanism for attempting "to confront race-based fears of hostility by means other than the use of offensive stereotypes." *Edmonson v. Leesville Concrete Co.*, —— U.S. ——, ·111 S.Ct. 2077, 2088, 114 L.Ed.2d 660 (1991). In arguing this point, appellant relies upon *Keeton v. State*, 749 S.W.2d 861 (Tex.Crim.App.1988). We find *Keeton* to be applicable, but it in no way supports appellant's argument.

In *Keeton*, the Court of Criminal Appeals discussed nine factors that are illustrative of the types of *evidence* that can be used to raise the inference of discrimination. The majority of the factors discussed by the court require evidence of the prosecutor's past conduct or the type and manner of the prosecutor's questions during voir dire or evidence regarding characteristics of specific venirepersons. *See* 749 S.W.2d at 867. At the *Batson* hearing in this case, appellant failed to present any evidence regarding the past conduct of the prosecutor, the prosecutor's questions during voir dire or specific characteristics of the venirepersons. In addition, appellant failed to establish either the race of the victim or the race of any of the state's witness. The *Batson* motion established only that the prosecutor had exercised four of her ten peremptory strikes to remove black venirepersons from the jury.

■ It is clear from the opinion in *Keeton*, that evidence regarding a prosecutor's use of peremptory strikes can raise an inference of discrimination. Discriminatory intent may be inferred where a prosecutor engages in a pattern of strikes against black jurors and uses peremptory strikes to dismiss all or most black jurors from the venire. *See Keeton*, 749 S.W.2d at 867. Likewise, circumstantial evidence of such intent may be proven by disparate impact where a prosecutor uses all or most of her peremptory strikes to exclude blacks from the jury. *See id.*

■ In this case, the prosecutor's use of her peremptory strikes did not cause a disparate impact on the composition of the jury. The prosecutor did not use "most or all" of her peremptory strikes to remove blacks from the venire, and of the eight black persons on the venire of forty prospective jurors, three were selected for the jury. Similarly, the prosecutor's use of her peremptory strikes did not constitute a "pattern" of strikes raising an inference of discriminatory intent. Such a "pattern" may be shown by proof that the prosecutor struck most or all of the members of the defendant's racial group or used a disproportionate number of peremptory strikes

against the group. *See Dewberry v. State,* 776 S.W.2d 589, 591 (Tex.Crim.App.1989). Unlike *Dewberry,* where the defendant showed that the prosecutor had exercised five of her ten peremptory strikes to exclude five of the six black venirepersons from the jury and that only one black venireperson was impanelled on the jury, *see id.,* there is no evidence in this case that the prosecutor engaged in a pattern of strikes that would raise an inference of discrimination.

■ We are mindful of the fact that the burden of establishing a prima facie case in a *Batson* hearing is not onerous, but to find that appellant's showing raised an inference of discrimination in this case would effectively eliminate what little is left of the *Batson* prima facie case test. Although a prima facie case represents only the minimum quantum of evidence necessary to support a rational inference that an allegation of discrimination is true, the party with the burden of proof must produce at least that much evidence to avoid a finding that the allegation is not true as a matter of law. *Tompkins v. State,* 774 S.W.2d 195, 201 (Tex.Crim.App.1987), *aff'd by an equally divided Court,* 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989). We hold that appellant failed to establish a prima facie case of purposeful racial discrimination in the court below. Accordingly, appellant's first point of error is overruled.

■ In his second point of error, appellant contends that the trial court erred in denying his motion to the quash the jury panel following certain statements by the prosecutor during voir dire. Specifically, appellant complains of the following exchange between the prosecutor and one of the prospective jurors:

[PROSECUTOR]: Two people come, say two different stories. Is that automatic reasonable doubt? Well, your job, if selected to be on the jury, is to resolve that conflict to the best of your ability. Sometimes it's not possible, obviously. But your job is to be, is to try to do your best to resolve the conflict.

Is there anybody here who feels like they wouldn't be able to resolve conflict? In other words, wouldn't be able to tell who's telling the truth if both sides—two people were saying two different things? Anybody have any problem with that? Speak now.

\* \* \* \* \* \*

[PROSPECTIVE JUROR]: Are you saying there is no reasonable doubt?

[PROSECUTOR]: My case, based on the evidence, I am submitting, there will not be. But that is going to be up to the jurors to decide if there is, based on the evidence.

Appellant objected to the prosecutor's last statement without specifying any grounds for his complaint. The trial court, in an apparent abundance of caution, sustained the objection and instructed the jury not to consider the statement for any purpose. Thereafter, appellant's motion to quash the jury panel was denied.

■ Appellant argues that his conviction should be reversed, because the above statement by the prosecutor constituted an expression of personal opinion regarding his guilt. This argument is completely without merit. When asked whether she was suggesting that there was no reasonable doubt in the case, the prosecutor responded by explaining "that is going to be up to the jurors to decide if there is, based on the evidence." This response did not constitute an improper expression of personal opinion. Moreover, in light of the fact that the statement was clearly neither inflammatory nor prejudicial, it is obvious that any error resulting from the prosecutor's comments was rendered harmless by the trial court's remedial instruction. Appellant's second point of error is overruled.

The judgment of conviction is affirmed.