TEXAS TECH UNIVERSITY HEALTH
SCIENCES CENTER, Appellant,

v.

Luis J. APODACA, Appellee.

No. 08–93–00045–CV.

Court of Appeals of Texas,
El Paso.

Feb. 16, 1994.

Rehearing Overruled May 4, 1994.

Dan Morales, Atty. Gen. of Texas, Austin, Gordon Gunter, Joseph A. Pitner, Asst. Attys. Gen., of Texas, Tort Litigation Div., Austin, for appellant.

Mark Pierce, J. Morgan Broaddus, III, Atty. and Counselor at Law, El Paso, for appellee.

Before BARAJAS, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from a judgment rendered against Texas Tech Health Sciences Center, Appellant, for the sum of $250,000 plus costs, following a jury trial of a negligence case. In six points of error, Appellant attacks the judgment of the trial court. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

Luis Apodaca, Appellee, was admitted to R.E. Thomason General Hospital in El Paso, Texas on March 6, 1987 with symptoms of a stroke. He was placed under the care of Dr. Mazhar Hussein Lakho, an employee of Appellant, and was restrained in his bed with wrist restraints. Appellee remained under the care of Dr. Lakho at all relevant times. Two days after his admission into the hospital, Appellee suffered a seizure. Dr. Lakho ordered an intravenous injection of the drug Valium to stop the seizure and sedate Appellee. At the time he prescribed the injection of the drug and its administration, which was around midnight on March 8, 1987, Dr. Lakho gave no further orders or instructions regarding the observation of Appellee.

Approximately two hours after the injection of the Valium, Appellee began showing signs of being agitated with the wrist restraints. A nurse at the hospital reported this development to Dr. Lakho, who ordered by telephone the restraints removed. Again, no further orders or instructions regarding the observation of Appellee were given by Dr. Lakho. Approximately two hours after the restraints were removed, Appellee was found on the floor of his hospital room with a serious injury to his right eye. The injury resulting from the fall from his hospital bed required surgery and resulted in total blindness in that eye. The surgery was performed by Dr. Rosen, also an employee of Appellant.

Appellee brought suit against Appellant for the injuries he sustained from the fall. The jury found that the negligent use by Appellant of tangible personal property was a proximate cause of Appellee's injuries. Based on the jury's verdict, the trial court rendered judgment for Appellee, with the total amount of the judgment reduced to Appellant's limit of liability under the Texas Tort Claims Act.

## II. *DISCUSSION*

In Point of Error No. One, Appellant asserts that the trial court erred in overruling its *Batson* motion based on Appellee's use of peremptory strikes as being racially motivated.

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the due process clause of the 14th Amendment is violated if prospective jurors are excluded from service in criminal trials on the basis of race or ethnicity. This holding has been extended to civil cases. *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

In *Edmonson,* the U.S. Supreme Court emphasized that "[r]acial discrimination has no place in the courtroom, whether the proceeding is civil or criminal," and holding that "courts must entertain a challenge to a private litigant's racially discriminatory use of peremptory challenges in a civil trial." *Edmonson,* 500 U.S. at 629, 111 S.Ct. at 2088.

Texas has affirmed the extension of *Batson* challenges to civil cases in *Powers v. Palacios,* 813 S.W.2d 489 (Tex.1991).

We consider the appropriate procedures utilized by the trial courts to implement the *Edmonson and Powers* decisions. In *Edmonson,* the United States Supreme Court adopted the *Batson* approach in determining whether peremptory challenges in a civil lawsuit were exercised for racially discriminatory reasons. *Edmonson,* 500 U.S. at 631, 111 S.Ct. at 2088. The evidentiary rules for making this determination were left to the states to develop. *Id.* at 631, 111 S.Ct. at 2088. We are cognizant of the fact that after the *Batson* decision, the Texas Code of Criminal Procedure was amended to incorporate the *Batson* holding. TEX.CODE CRIM.PROC. ANN. art. 35.261 (Vernon 1989). As of the date of this opinion, this Court is not aware of any similar proposal to amend the Texas Rules of Civil Procedure. Therefore, we rightfully look to the criminal jurisprudence of our state for guidance, and will apply those principles to civil litigation. *See Lott v. City of Fort Worth,* 840 S.W.2d 146 (Tex. App.—Fort Worth 1992, no writ); *Pierson v. Noon,* 814 S.W.2d 506, 507–08 (Tex.App.— Houston [14th Dist.] 1991, writ denied).

*Batson* and its progeny require that the complaining party establish a *prima facie* case of discrimination. A *prima facie* case is established by a suspect pattern of strikes. *Lott v. City of Fort Worth,* 840 S.W.2d at 150. In furthering that goal, movant must present evidence that gives rise to a rebuttable presumption of racial discrimination by the striking party in the exercise of its peremptory challenges. If the complaining party carries that burden, then the burden shifts to the striking party to rebut the presumption by a racially neutral explanation for each peremptory challenge exercised against a minority venireperson. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723; *Keeton v. State,* 749 S.W.2d 861, 871 n. 1 (Tex.Crim. App.1988); *Lott v. City of Fort Worth,* 840 S.W.2d at 150.

Initially, we note that it is incumbent upon the movant, if he is to be successful, to provide a record illustrating that the

trial judge's findings are clearly erroneous. *See Williams v. State*, 804 S.W.2d 95, 101 (Tex.Crim.App.1991), *cert. denied*, — U.S. —, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991); *see also Hill v. State*, 827 S.W.2d 860, 865 (Tex.Crim.App.1992), *cert. denied*, — U.S. —, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992); *Wyle v. State*, 836 S.W.2d 796, 797 (Tex.App.—El Paso 1992, no pet.). The trial court's findings regarding whether a *prima facie* showing has been made are entitled to "great deference" and will not be disturbed on appeal unless clearly erroneous. *Hernandez v. New York*, 500 U.S. 352, 363, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395, 408–09 (1991); *Whitsey v. State*, 796 S.W.2d 707, 726 (Tex.Crim.App.1989) (opin. on reh'g). In the case before us, the trial court overruled the Appellant's objection without reducing his findings of fact and conclusions of law to writing or stating them on the record. In the criminal context, such a ruling has been held to be an implied finding that none of the peremptory challenges at issue were exercised on the basis of the venirepersons' race. *Martinez v. State*, 824 S.W.2d 724, 726 (Tex.App.—Fort Worth 1992, pet. ref'd.); *see also Lott v. City of Fort Worth*, 840 S.W.2d at 150. We so find here.

■ In order to challenge possible discriminatory selection of a venire, the movant must make a *prima facie* showing that:

(1) he/she is a member of a cognizable racial group;

(2) that opposing counsel has exercised peremptory challenges to remove from the venire members of a minority group[1]; and

(3) these facts, and any other relevant circumstances, raise an inference that opposing counsel excluded the venirepersons from the venire because of their race.

*Batson*, 476 U.S. at 96, 106 S.Ct. at 1722; *see also Henry v. State*, 729 S.W.2d 732, 734 (Tex.Crim.App.1987). A *prima facie* case represents the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true. *Tompkins v. State*, 774 S.W.2d 195, 201 (Tex.Crim.App.1987), *cert. granted*, 486 U.S. 1053, 108 S.Ct. 2818, 100 L.Ed.2d 919 (1988), *judgment aff'd per curiam*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989), *reh'g denied*, 492 U.S. 933, 110 S.Ct. 16, 106 L.Ed.2d 630 (1989); *Rodriguez v. State*, 819 S.W.2d 920, 926 (Tex.App.—Houston [14th Dist.] 1991, no pet.). The burden of establishing a *prima facie* case is on the movant.[2] *See Tennard v. State*, 802 S.W.2d 678, 680 (Tex.Crim.App.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991); *Bean v. State*, 816 S.W.2d 115, 117 (Tex.App.—Houston [14th Dist.] 1991, no pet.). Once a *prima facie* case is established, the movant is entitled to an adversarial hearing in order to challenge opposing counsel's possible discriminatory selection of a venire.[3]

---

1. It is no longer necessary that the movant and the struck veniremember be of the same race, only that the veniremember be a member of a minority. *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *see also Rousseau v. State*, 824 S.W.2d 579, 584 n. 9 (Tex.Crim.App.1992).

2. The prima facie showing which a movant must make has been the subject of much discussion. The Texas Court of Criminal Appeals has discussed the level to which this showing must rise in *Dewberry v. State*, 776 S.W.2d 589 (Tex.Crim. App.1989). There the court observed:

 A *prima facie* case represents the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true. The party with the burden of proof must produce at least this much evidence to avoid a finding that the allegation is not true as a matter of law. Once produced, however, the allegation must be found true unless it is contradicted, impeached, or rebutted by other evidence....

 *Id.* at 590 (quoting *Tompkins v. State*, 774 S.W.2d 195, 201 (Tex.Crim.App.1987), *cert. granted*, 486 U.S. 1053, 108 S.Ct. 2818, 100 L.Ed.2d 919 (1988), *judgment aff'd per curiam*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989), *reh'g denied* 492 U.S. 933, 110 S.Ct. 16, 106 L.Ed.2d 630 (1989)).

3. A *Batson* hearing is an "evidentiary hearing," held on the record and in open court, with the judge serving as the "fact-finder." *Lott v. City of Fort Worth*, 840 S.W.2d at 149–50; *see also Salazar v. State*, 795 S.W.2d 187, 192–93 (Tex.Crim. App.1990); *Tompkins v. State*, 774 S.W.2d 195, 201–02 (Tex.Crim.App.1987), *aff'd per curiam*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989). It is an "adversary proceeding" with clearly identified burdens. *Keeton v. State*, 749 S.W.2d 861, 871 n. 1 (Tex.Crim.App.1988) (Teague, J., concurring). Thus, the usual procedural

*Batson,* 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88; *Aguilar v. State,* 826 S.W.2d 760, 761 (Tex.App.—Fort Worth 1992, pet. ref'd); *see also* TEX.CODE CRIM. PROC.ANN. art. 35.261. On the other hand, if the movant fails to establish a *prima facie* case, the trial court can safely deny the movant's objections that are premised on *Batson.*[4] Should a hearing be held, the burden is on opposing counsel to articulate racially neutral reasons for the peremptory strikes at issue. *Dewberry v. State,* 776 S.W.2d 589, 590 n. 1 (Tex.Crim.App.1989); *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723. Once opposing counsel has asserted its racially-neutral explanation for excluding the veniremember, the burden of persuasion rests on the movant to prove by a preponderance of the evidence the invalidity of that explanation. *Mock v. State,* 848 S.W.2d 215, 226 (Tex.App.—El Paso 1992, pet. ref'd) *citing Salazar v. State,* 818 S.W.2d 405, 409 (Tex.Crim.App.1991).

We review the record in its entirety by considering the *voir dire* process including the racial constitution of the venire, where apparent on the record, and the counsel's neutral explanations, where applicable, to determine if the trial court's ruling was clearly erroneous. *Whitsey v. State,* 796 S.W.2d at 726.

■ In the instant case, Appellant contends that of the first 27 veniremembers, 6 individuals were of Anglo origin and 1 African–American. Appellant's sole basis for advancing its *Batson* challenge rests on the assertion that the peremptory strikes exercised by Appellee were exercised against members of a racial or ethnic group that was different than Appellee, i.e., Hispanic. Appellant specifically objected to the striking of six **unidentified** veniremembers because they were of a "different" ethnic persuasion as Appellant; however, other than the identification of the sole African–American on the venire, Appellant wholly failed to establish

the racial and/or ethnic background of the remaining veniremembers that were peremptorily challenged by Appellee. Moreover, while the record does contain a list of the venire, the list wholly fails to note the racial and/or ethnic composition of the venire. In fact, there is nothing in the record to show how many veniremembers were African–American, how many were Hispanic, or how many were "Others." Finally, while appellate courts in the past have been free to dangerously surmise what the racial and/or ethnic composition of a jury that is ultimately selected, this Court declines to join in such speculation, absent a clear reference to the record. Not all veniremembers look alike.

■ In determining whether Appellant established the third element of its *prima facie* case, i.e., whether it showed any combination of factors sufficient to raise the necessary inference of purposeful discrimination, we note once again, that the United States Supreme Court, in *Powers,* held that while it is no longer necessary that the movant and the struck veniremember be of the same race or ethnic background, the veniremember must be a member of a minority. *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). We find where the movant has wholly failed to establish that any excluded venireperson is a member of a minority group, no inference can be drawn that such venirepersons were excluded from the venire simply because of their race or ethnic origin. As noted in *Bean v. State,* 816 S.W.2d at 117, *Batson* is not a talisman, the invocation of which automatically raises an inference of racial discrimination. It is, at best, a clumsy procedural mechanism for attempting "to confront race-based fears of hostility by means other than the use of offensive stereotypes." *Edmonson,* 500 U.S. 614, 630, 111 S.Ct. 2077, 2088.

The facts and circumstances of the instant case, as supported by the scant record before

and evidentiary rules apply. *Lott v. City of Fort Worth,* 840 S.W.2d at 149–50; *Shields v. State,* 820 S.W.2d 831, 832 (Tex.App.—Waco 1991, no pet.).

4. In the criminal context, should an appellate court find that a *prima facie* case was indeed established, but the movant not afforded a hear-

ing, the appeal will be abated and the cause remanded to the trial court with instructions to conduct a full adversarial hearing complying with Article 35.261, V.A.C.C.P., and *Batson.* We find no distinction exists to treat review of civil cases any differently.

us, do not raise an inference of purposeful discrimination on the part of Appellee. We find that Appellant failed to establish the required *prima facie* case that would tend to establish that the peremptory strikes that were exercised by Appellee were done so in an effort to purposefully discriminate. Accordingly, we find that the decision of the trial court in overruling Appellant's purported *Batson* challenge was not clearly erroneous. Appellant's Point of Error No. One is overruled.

In Point of Error No. Two, Appellant asserts that the trial court erred in failing to grant its motion to exclude expert testimony as the designation of the expert was in violation of the Texas Supreme Court's decision in *Alvarado v. Farah Mfg. Co., Inc.*, 830 S.W.2d 911 (Tex.1992). The record shows that on December 10, 1991, the instant case was set for trial on April 27, 1992 with a pretrial conference to be held on April 10, 1992. On April 27, both parties announced that they were ready for trial, and a jury was empaneled and sworn. Before any evidence was adduced, however, Appellant moved for the exclusion of two of Appellee's fact witnesses on the grounds that they had not been properly disclosed in response to Appellant's discovery requests. *See* TEX.R.CIV.P. 166b and 215(5). The trial court sustained the motion excluding the two fact witnesses and, pursuant to Appellee's request, ordered a continuance of the trial. Although the record does not contain a written order setting the new trial date, it clearly shows that the trial finally commenced on September 8, 1992, more than four months after the April 27 setting.

In *Alvarado*, the Supreme Court recognized that Rule 215(5), as written, prescribes a single sanction for the failure to respond to or supplement discovery—exclusion of the evidence. *Alvarado*, 830 S.W.2d at 915; *see* TEX.R.CIV.P. 215(5). The Supreme Court further stated that:

We note, however, that the trial courts are not without power to prevent the enforcement of Rule 215(5) from operating as an injustice in a particular case. When a party has failed to timely identify evidence in response to discovery requests, the trial court has the discretion to postpone the trial and, under Rule 215(3), to impose an appropriate sanction upon the offending party for abuse of the discovery process. Such sanction may be used to compensate the non-offending party for any wasted expense in preparing for trial. Although the trial court should not allow delay to prejudice the non-offending party, the trial court should ordinarily be able to cure any prejudice by a just imposition of sanctions.

*Alvarado*, 830 S.W.2d at 915–16.

The record in the instant case shows that Appellee used the continuance to supplement his discovery responses to name the two excluded fact witnesses as persons with knowledge of relevant facts. This supplementation was done more than thirty days prior to the September 8 trial date and was clearly of the type contemplated by the Supreme Court in *Alvarado*. Appellant further supplemented his responses to discovery, however, by also designating a new expert witness, Thomas Laurence Huffman, M.D., on August 7, 1992, 31 days before the September 8 trial date. It is the designation of Dr. Huffman that Appellant complains of in this appeal.

Appellant contends that the trial court abused its discretion under the holding of *Alvarado* by failing to protect it from prejudice or harm caused by Appellee's non-compliance with the discovery process, in that the trial court allowed the testimony of Dr. Huffman. The harm claimed by Appellant was the fact that during the continuance, Appellee was able to first locate, then designate and use at trial a previously undesignated expert. This extra time to prepare for trial, Appellant argues, puts the non-offending party to the choice of either going to trial and facing the testimony of a non-designated witness or taking the risk of objecting to the offending party's non-compliance and being harmed by the trial court awarding that party additional time to locate a new expert witness to testify at trial.

We fail to see how Appellant was harmed in this manner by the action of the trial court in allowing the testimony. The Supreme Court in *Alvarado* gave the trial court the discretion to postpone a trial in this exact

situation if the delay does not prejudice the non-offending party. *Alvarado* 830 S.W.2d at 915. The Supreme Court further stated, in *H.B. Zachry Co. v. Gonzalez*, 847 S.W.2d 246 (Tex.1993), that when a trial setting was postponed, a party must be permitted an opportunity to timely supplement answers in accordance with the rules governing discovery in a civil lawsuit. *H.B. Zachry Co.*, 847 S.W.2d at 246–47.

The test for abuse of discretion is not whether, in the opinion of this Court, the facts present an appropriate case for the trial court's actions. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *citing Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). Another way of stating the test is whether the act was arbitrary or unreasonable. *Id.* 701 S.W.2d at 242, *citing Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex.1984); *Landry v. Travelers Ins. Co.*, 458 S.W.2d 649, 651 (Tex.1970).

The guiding rules and principles in this case are the rules governing discovery found in the Texas Rules of Civil Procedure and the body of case law interpreting those rules. Rule 166b(6)(b) mandates that expert witnesses must be designated "as soon as practical, but in no event less than thirty (30) days prior to the beginning of trial except on leave of court." Rule 215(5) allows such leave of court only if good cause for the admission of the evidence is shown. The rationale for requiring a party to designate its expert witness 30 days before trial is to allow the other party adequate time to prepare for that witness's testimony and evidence.

Appellee designated Dr. Huffman as an expert witness 31 days before the September 8 trial date in accordance with Rules 166b and 215(5). There is no need for a showing by Appellee of good cause to allow an expert witness to testify when the designation of the expert was made more than thirty days before trial. *Mother Frances Hosp. v. Coats*, 796 S.W.2d 566, 570 (Tex. App.—Tyler 1990, no writ). Thus, the designation of Dr. Huffman 31 days before trial comported with Rules 166b and 215(5), and since Appellant had a sufficient time to prepare for Dr. Huffman's testimony, Appellant was not harmed or prejudiced by this designation. Accordingly, Appellant's Point of Error No. Two is overruled.

In Point of Error No. Three, Appellant asserts that the trial court erred in overruling its motion for judgment n.o.v. and motion for new trial and in entering judgment for Appellee because there was no evidence or, in the alternative, insufficient evidence to show actual or formal written notice to Appellant under the Texas Tort Claims Act (the Act). *See* TEX.CIV.PRAC. & REM.CODE ANN. §§ 101.001–.109 (Vernon 1986 and Supp. 1993). Section 101.101 defines the type and timeliness of the notice of a claim required by the Act.[5] As the briefs of the parties reflect no real dispute as to the lack of formal written notice, we confine our inquiry to the sufficiency of the evidence regarding the actual notice of Appellant.

The record in the instant case reveals that Appellee, plaintiff below, pleaded in its Fourth Amended Original Petition that Appellant/Defendant "had actual notice of this claim immediately upon its occurrence and well before any statutory deadline for such notice." Thereafter, Appellant filed a verified special denial that it received timely actual notice as required by the Act. This verified special denial created a fact issue for the jury as to the existence of actual notice. *Alvarado v. City of Lubbock*, 685 S.W.2d 646,

---

5. TEX CIV PRAC & REM.CODE ANN. § 101.101 (Vernon 1986) provides in pertinent part as follows:
 (a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonable describe:
 (1) the damage or injury claimed;
 (2) the time and place of the incident; and

(3) the incident.

. . . . .

(c) the notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

649 (Tex.1985); *Lorig v. City of Mission,* 629 S.W.2d 699, 701 (Tex.1982); *Davis v. Mathis,* 846 S.W.2d 84, 87 (Tex.App.—Dallas 1992, no writ). Appellant's verified special denial also served to place the burden to prove and secure a finding on actual notice on Appellee. *Davis,* 846 S.W.2d at 87.

The record in the instant case shows that no jury question on the issue of actual notice was submitted to the jury. This omission of the notice question from the charge raises the issue of deemed findings, if possible in this situation, under Rule 279 of the Texas Rules of Civil Procedure. TEX.R.CIV.P. 279.[6] First, we note that the record before this Court on appeal shows that neither party requested a jury question on actual notice or objected to its omission from the charge. Next, we note that Appellee's ground of recovery at issue in this case is negligence under the Texas Tort Claims Act; this ground consists of the elements that constitute common-law negligence, which were submitted to and found by the jury, plus the element of notice as required by the Act, which was omitted from the jury charge. Thus, there are more than one element necessary to sustain this ground of recovery. We must determine, then, whether the omitted element of notice is necessarily referable to the Tort Claims Act ground of recovery and, if so, whether there is factually sufficient evidence to support a deemed finding thereon.

We have been unable to find any Texas cases that specifically address the question of whether the notice issue is necessarily referable to a party's Tort Claims Act negligence ground of recovery. This Court's recent opinion in *U.S. Fire Ins. Co. v. Ramos,* 863 S.W.2d 534 (Tex.App.—El Paso 1993, no writ), however, provides the necessary guidance in making this determination. In *U.S. Fire,* this Court held that in an action brought under the then existing worker's compensation laws, which included a statutory notice provision analogous to that found in the Tort Claims Act, the notice element was not an independent ground of recovery but was a component of the ultimate issue of the claimant's right of recovery, making the issue necessarily referable to the other elements of the worker's compensation ground of recovery. *U.S. Fire,* 863 S.W.2d at 537–38.

■ We are guided by *U.S. Fire,* and reach the same conclusion in the instant case. The notice provision found in the Texas Tort Claims Act is not a separate and independent ground of recovery. It is a component of the entire negligence cause of action allowed by the Act. As such, the omitted element of notice is necessarily referable to the Tort Claims Act negligence ground of recovery relied upon by Appellee.

Having determined that the notice element is necessarily referable to Appellee's ground of recovery, we must finally determine whether there is factually sufficient evidence to support a finding thereon. If the omitted element of notice is supported by some evidence, we must then deem it found against Appellant under Rule 279. *Ramos v. Frito-Lay, Inc.,* 784 S.W.2d 667, 668 (Tex.1990).

■ In considering a "no evidence" or legal sufficiency point, the appellate court considers only the evidence that tends to support the jury's findings, or deemed findings in this case, and disregards all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Worsham*

---

6. TEX R.CIV.P. 279 reads as follows:

Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived. **When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request or objection, and there is factually sufficient evidence to support a finding** thereon, the trial court at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted element or elements in support of the judgment. If no such written findings are made, **such omitted element or elements shall be deemed found by the court in such manner as to support the judgment.** A claim that the evidence was legally or factually insufficient to warrant the submission of any question may be made for the first time after verdict, regardless of whether the submission of such question was requested by the complainant. [Emphasis added].

*Steel Co. v. Arias,* 831 S.W.2d 81 (Tex.App.— El Paso 1992, no writ). If any probative evidence supports the jury's determination, it must be upheld. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *Neily v. Aaron,* 724 S.W.2d 908 (Tex.App.— Fort Worth 1987, no writ). A "no evidence" point may be sustained only when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by the rules of law or evidence from giving weight to the evidence offered of a vital fact; (3) no more than a scintilla of evidence is offered of a vital fact; or (4) the evidence conclusively establishes the opposite of a vital fact. *Neily,* 724 S.W.2d at 913.

A factual sufficiency inquiry requires examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 244 S.W.2d at 660; *Worsham Steel Co. v. Arias,* 831 S.W.2d at 81. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Carrasco v. Goatcher,* 623 S.W.2d 769 (Tex.App.—El Paso 1981, no writ).

Appellee asserts that the deposition and trial testimony of Dr. Lakho, the deposition testimony of Dr. Rosen, and the Incident Report dated March 9, 1987, the same date as the incident, comprise ample evidence to support the finding that Appellant had actual notice of the claim within the statutory period. Dr. Lakho was Appellee's treating physician at the time of the incident. His testimony reveals that he was informed of Appellee's accident and saw Appellee shortly thereafter. Dr. Lakho signed an incident report, stating that he had seen Appellee after the incident. This incident report noted that Appellee had suffered an injury to his eye and that Dr. Rosen had been contacted. Dr. Rosen, who was at the time of the incident, the assistant clinical chief of ophthalmology for Appellant, testified that he saw Appellee on the floor after the incident and noted the injury to his eye.

Appellant contends that the evidence that Dr. Lakho and Dr. Rosen, employees of Appellant, knew that Appellee had fallen and injured his eye is not legally or factually sufficient to show that Appellant had actual knowledge of Appellee's claim. Under the limited facts of this case, we disagree. Appellant relies on the *Davis v. Mathis* case to support this position. *See Davis,* 846 S.W.2d at 87–88. In *Davis,* the Dallas Court of Appeals affirmed a directed verdict for a governmental unit, holding there was no evidence of actual notice of the claim. *Id.* The court based its holding on the fact that there was no evidence that anyone with the duty to gather facts and report them to the governmental unit investigated the incident forming the basis of the suit. *Id.*

The instant case is readily distinguishable from the *Davis* case in that Dr. Lakho and Dr. Rosen, as physicians, did have the duty to gather facts and investigate the incident. Further, the incident was reported to Appellant by virtue of the Incident Report signed by Dr. Lakho. The report itself is printed on a form containing Appellant's name, and shows that it was reviewed by a member of Appellant's "risk management" department two days after the incident.

After carefully reviewing only the evidence that tends to support the jury's findings, and disregarding all evidence and inferences to the contrary, we find the evidence to be legally sufficient to support the deemed finding of actual notice. Further, after carefully reviewing all of the evidence, we find that the jury finding in question is not against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, Appellant's Point of Error No. Three is overruled.

In Points of Error Nos. Four and Five, Appellant asserts that the trial court erred in submitting Question No. 1 to the jury and in overruling its motions for judgment n.o.v. and new trial. Question No. 1, as submitted to the jury, read as follows:

On or about March 8 or 9, 1987, was the negligence, if any, of the Defendant Texas Tech University Health Sciences Center, in the condition or use of any item of tangible personal property, a proximate cause of the occurrence in question?

Answer "Yes" or "No."

ANSWER: _____

Appellant contends that the above question erroneously permitted the jury to find negligence in the use of Valium in spite of Appellee's stipulation that such use was not negligent. Appellant further contends that there was no evidence or, alternatively, insufficient evidence to support the jury's answer of "yes" to Question No. 1.

Plaintiff/Appellee's Fourth Amended Original Petition contained numerous allegations of negligence resulting from the improper care, treatment, and observation given Appellee after being given an intravenous dose of Valium, a form of tangible personal property. These allegations included:

(a) failing to use the physician's order sheet to transfer Appellee to a unit where he could be closely monitored;

(b) failing to use the physician's order sheet to order bedside observation;

(c) failing to use the physician's order sheet to contact Appellee's family and ask them to return to the hospital to watch Appellee;

(d) failing to use the physician's order sheet to order that the bed rails be kept up;

(e) failing to use the telephone to contact Appellee's family to ask them to return to the hospital to watch Appellee;

(f) failing to use the telephone to call a senior staff physician and consult before ordering the removal of the wrist restraints;

(g) failing to use restraints to protect Appellee after his seizure and injection with Valium;

(h) utilization of the telephone to order the removal of the restraints;

(i) failing to use the telephone to order the transfer of Appellee to a unit where he could be closely monitored;

(j) failing to use the telephone to order bedside observation;

(k) failing to use the telephone to order protective restraints after Appellee's seizure and injection with Valium;

(l) failing to use the telephone to order that the bed rails be kept up;

(m) failing to do a proper mental examination of Appellee prior to ordering the removal of the restraints.

While Appellee did in fact stipulate that the giving of Valium was not negligent, as this was the proper medication for a person suffering from a seizure, the record does establish that Appellee's allegations of negligence concern the follow-up care given to Appellee after the injection.

The jury charge contained the following instructions:

"Use" means to put or bring into action or service; to employ for or apply to a given purpose.

You are instructed that the giving of Valium, in and of itself, is not negligence.

 During the trial, Appellee provided expert testimony regarding the various possible side effects of Valium, including causation of confusion, disorientation, and agitation. Appellee also produced the opinion of its expert witness that after suffering a seizure and being given the drug Valium, Appellee should have been more closely observed to protect against any foreseeable consequences of any adverse side effects, including falling out of bed. The expert witness also testified that it is generally within the authority of the treating physician to order any and all precautionary measures.

 Appellee further asserts that the follow-up care given to Appellee, after the giving of Valium, is included within the definition of the word "use," as provided to the jury. We agree. After reviewing the record, we find that the "use" of the tangible personal property in the instant case, i.e., Valium, thus involved not only the actual **dispensing** of the drug but also any required follow-up care necessarily associated with such dispensing. In that regard, we find that Question No. 1, as submitted to the jury, did not erroneously allow the jury to find negligence in the "use" of Valium in spite of Appellee's stipulation that the dispensing of the drug as such was not negligence. Question No. 1, as submitted, properly allowed the jury to conclude that the failure to administer any required follow-up care, after the dispensing of Valium, constituted the

"use" of the drug, above and beyond its mere dispensing. Appellant's Point of Error No. Four should be overruled.

After carefully reviewing only the evidence that tends to support the jury's finding as to Question No. 1, and disregarding all evidence and inferences to the contrary, we find the evidence to be legally sufficient to support the jury's finding of negligence. Further, after carefully reviewing all of the evidence, we find that the jury finding in Question No. 1 is not against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, Appellant's Point of Error No. Five is overruled.

In Point of Error No. Six, Appellant asserts that the trial court erred in overruling its objection to the second jury panel for the reason that the April jury had never been discharged and, alternatively, that there were no grounds to discharge the April jury. The record shows that before the *voir dire* of the second jury panel on September 8, 1992 commenced, Appellant objected to a new jury panel and requested that the former jury that had been sworn be used in the trial. The trial court denied Appellant's request, stating that the April court had continued the case and discharged the jury at that time.

Appellant states that under Rule 289 of the Texas Rules of Civil Procedure,[7] no grounds existed for the discharge of the first jury. We find Appellant's reliance on Rule 289 to be misplaced in that the instant case was never submitted to the April jury for their deliberation. That jury was discharged before any evidence was adduced. Consequently, we find no error in first discharging the April jury and subsequently allowing the September jury to be empaneled and sworn.

Further, even if we find that Rule 289 does apply and that it was error to allow the September jury to hear the case, it is the opinion of this Court that any such error was harmless. *See* Tex.R.App.P. 81(b)(1). There is nothing in the record to indicate that the

jury pool from which the September jury was chosen was anything other than a valid representation of the cross-section of the community. Appellant was allowed the full and unbridled opportunity to *voir dire* the September jury panel and did indeed take advantage of such opportunity. Appellant was also given the full number of peremptory strikes to use in selecting the September jury. Appellant's Point of Error No. Six is overruled.

Having overruled each of Appellant's points of error, the judgment of the trial court is hereby affirmed.

**7.** Tex.R.Civ P. 289 reads:
The jury to whom a case has been submitted may be discharged by the court when they cannot agree and the parties consent to their discharge, or when they have been kept together for such time as to render it altogether improbable that

they can agree, or when any calamity or accident may, in the opinion of the court, require it, or when by sickness or other cause their number is reduced below the number constituting the jury in such court. [Emphasis added].