

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-21-00250-CR
_____

DREW DON HUGG, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 69th District Court
Moore County, Texas
Trial Court No. 5960, Honorable Ron Enns, Presiding

August 23, 2022

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Drew Don Hugg, appellant, appeals his conviction for possession of a controlled substance. In his sole issue, appellant claims the trial court erred in denying his *Batson* challenge.[1] We affirm.

---

[1] *See Batson v. Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986) (Equal Protection Clause of Fourteenth Amendment to United States Constitution prevents exercise of peremptory strikes based on prospective juror's race). A complaint regarding the State's use of a peremptory challenge based on discriminatory reasons is commonly known as a *Batson* challenge.

**BACKGROUND**

Appellant was charged with the offense of possession of methamphetamine in an amount less than four grams but more than one gram. The case was set for a jury trial.

At the conclusion of voir dire, appellant's counsel challenged the State's use of peremptory strikes on five venire members, arguing, "Judge, I think the record will reflect, based on the names and situation in the jury selection, that there were five Hispanics that the State has struck. And under *Batson* versus somebody . . . we would object to the striking of them based on race."[2]

Counsel for the State immediately responded that there was "also a number of Hispanic people that made it on the jury, so the reasons that I struck an individual or individuals that were struck is based on the responses to questions as far as whether they would consider empathy for a defendant, a prior relationship where somebody has a substance abuse problem."[3] The following exchange ensued:

| | |
|---|---|
| Appellant's counsel: | Your Honor, I would just ask her to take the specific jurors in turn and state the reason, not just general statements. |
| State's counsel: | Well, who were the specific jurors? |
| Appellant's counsel: | Number 2. |
| State's counsel: | She said she has a family member and past relationship with somebody that has |

---

[2] The record does not include juror information cards or other documents indicating the race or ethnicity of the venire members. It appears that the parties and the trial court may have relied, at least in part, on members' surnames to determine ethnicity. We acknowledge, not for the first time, that doing so poses concerns. *Goode v. Shoukfeh*, 915 S.W.2d 666, 672 n.8 (Tex. App.—Amarillo 1996), aff'd 943 S.W.2d 441 (Tex. 1997).

[3] The State exercised a total of eleven peremptory strikes.

substance abuse problems.  That's why she was struck.

Appellant's counsel:      That's it?

State's counsel:          Uh-huh.

Appellant's counsel:      Number 4.

State's counsel:          Mr. Diaz.  He's the one that said he would consider empathy for the defendant in guilt innocence.

Appellant's counsel:      Number 25.

State's counsel:          Who is that?

Appellant's counsel:      Briana Grajeda.

State's counsel:          She's the one – she gave the explanation about the time that she got pulled over, her explanation was the reason I struck her for that one, felt bad for the guy who was being searched.

Appellant's counsel:      And 34 which is Vazquez, Juan.

State's counsel:          That was also based on his answers to some of the – I don't have my notes.  I just circled no on that one.  I don't have any notes as to why.

Appellant's counsel:      You can get your notes.

State's counsel:          No, I didn't write down a note.  Whatever his answer was to the question[,] I put no.

Appellant's counsel:      Okay.  That was 34.  And then Number 36.

State's counsel:          I have no notes for him.  I struck him because I didn't have any answers for him.

Appellant's counsel:      Okay.  We just reurge the motion, Judge.

3

At that point, the trial court stated, "Well, the record will reflect there are seven – there were seven persons with Hispanic surnames chosen for the jury and the alternate is also Hispanic." The trial court added that, on the four-page list of prospective jurors, 26 of 56 individuals had Hispanic surnames. The trial court then denied appellant's *Batson* challenge.

Appellant's counsel responded, "Just for the record, I would still state that Number 34 and 36 on the list, the State was unable to give a race[-]neutral reason." Counsel for the State replied, "That is a race[-]neutral answer is that [sic] he didn't answer any questions which is why I struck him because I had no responses." The trial court thanked the attorneys and the inquiry ended.

After the jury was empaneled, the case proceeded to trial. The jury found appellant guilty of the offense charged and appellant was sentenced to ten years' confinement in the Texas Department of Criminal Justice and a fine of $8,000.

## ANALYSIS

In this appeal, appellant contends that the trial court erred in overruling his complaint that the State used its peremptory strikes to improperly exclude Hispanic jury panelists, thereby denying his right to equal protection under the law. *See Batson*, 476 U.S. at 89; *see also Hernandez v. New York*, 500 U.S. 352, 355, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991) (plurality op.) (prohibiting exclusion of Hispanic individuals from jury

service based on their ethnicity).[4] He challenges the trial court's ruling only as to two prospective jurors, number 34 and number 36.

A trial court's decision on a *Batson* challenge is reviewed under a clearly erroneous standard of review. *Hernandez*, 500 U.S. at 365–66; *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). We review the evidence relevant to the *Batson* challenge in the light most favorable to the trial court's ruling. *Cantu v. State*, 842 S.W.2d 667, 689 (Tex. Crim. App. 1992).

Beginning with *Batson*, the Supreme Court established a three-step process for addressing claims that the prosecution exercised a peremptory strike against a juror based on the juror's race. First, the defendant must make a prima facie case that a peremptory challenge was exercised on the basis of race; second, the prosecution must offer a race-neutral basis for striking the juror in question; and third, the trial court must determine whether the defendant has shown purposeful discrimination. *Snyder v. Louisiana*, 552 U.S. 472, 476–77, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008); *see also Simpson v. State*, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003). The burden of persuasion remains with the defendant to prove purposeful discrimination. *Simpson*, 119 S.W.3d at 268.

Here, the State first argues that appellant failed to make a prima facie case of racial discrimination as to prospective jurors 34 and 36. To make a prima facie case, a defendant must show that relevant circumstances raise an inference that the State made

---

[4] We will follow the Supreme Court's lead and use the term "Hispanic," which is also the terminology used by the parties before this Court.

a race-based strike. *Flores v. State*, 33 S.W.3d 907, 925 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). An argument that the State has struck minority venire members, without more, is insufficient to make a prima facie case. *See Bean v. State*, 816 S.W.2d 115, 119–20 (Tex. App.—Houston [14th Dist.] 1991, no pet.).

In this case, appellant requested that the State "state the reason" for the strikes, and the State obliged without objection, before the trial court determined whether appellant had made a prima facie case. When a responding party has offered a race-neutral reason for a peremptory challenge and the trial court has ruled on the ultimate issue of purposeful discrimination, the preliminary question of whether the objecting party made a prima facie case becomes moot. *Simpson,* 119 S.W.3d at 268. Because the State offered race-neutral reasons for its strikes and the trial court ruled in its favor, the prima facie case inquiry is moot, and we move to the question of whether the State's stated reasons were in fact race-neutral. *Id.* ("If, as here, the State offers a race-neutral explanation before any inquiry on the *prima facie* case, the issue of a *prima facie* case is moot.").

Under *Batson*, the prosecutor must give a clear and reasonably specific explanation of the legitimate reasons for exercising the challenged strike. *Batson*, 476 U.S. at 98 n.20. Here, the State explained that it struck individuals "based on the responses to questions as far as whether they would consider empathy for a defendant, a prior relationship where somebody has a substance abuse problem." As to number 34, the State again stated that he was struck "based on his answers." Counsel had no notes, but "[w]hatever his answer was to the question" caused her to "put no." As to number 36, the State "struck him because [counsel] didn't have any answers for him."

6

In this second step of the analysis, we determine whether the State's proffered reasons are facially valid. *Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995) (per curiam). The striking party's race-neutral explanation is merely a burden of production. *Murphy v. Arcos*, 615 S.W.3d 676, 686 (Tex. App.—Dallas 2020, pet. denied) (op. on reh'g). "This means that the reason offered need not be 'persuasive or even plausible,' so long as it is clear, reasonably specific, and 'based on something other than the juror's race.'" *Id.* (citing *Purkett*, 514 U.S. at 768, and *Goode v. Shoukfeh*, 943 S.W.2d 441, 445 (Tex. 1997)); *see also Splawn v. State*, 160 S.W.3d 103, 115 (Tex. App.—Texarkana 2005, pet. ref'd) (State is not required to offer good reasons, only race-neutral ones).

The State provided a reason for striking prospective juror 34, stating that it was based on his answer to her questions, which the State had earlier identified as "whether they would consider empathy for a defendant, a prior relationship where somebody has a substance abuse problem." The State also provided a reason for striking prospective juror 36, stating it was due to his failure to answer any questions and her resulting lack of information about him. Each of these explanations is race-neutral. Thus, we turn to the third step. *See Simpson*, 119 S.W.3d at 268 (once striking party offers race-neutral explanations, burden shifts back to complainant to prove that explanations are mere pretext for discrimination).

In the final step of our analysis, the question is whether the trial court's failure to find purposeful discrimination in the State's strikes was clearly erroneous. The appellant has the initial as well as the ultimate burden to persuade the trial judge that the strikes reflect purposeful discrimination. *Tompkins v. State*, 774 S.W.2d 195, 202 (Tex. Crim.

App. 1987). As set forth above, appellant provided only perfunctory statements in support of his *Batson* claim. He did not question the prosecutor further in an effort to demonstrate that her explanations were pretextual, nor did he present any argument to the trial court; he simply stated that "the State was unable to give a race[-]neutral reason" for striking number 34 and number 36.

In our review of the trial court's decision, we take into account the absence of further argument or factual development by appellant at the *Batson* hearing. *See Wamget v. State*, 67 S.W.3d 851, 853, 859 (Tex. Crim. App. 2001) (per curiam) (rejecting challenge where appellant failed to identify evidence that strike was based on race and did not question State's attorney regarding reason). A party's failure to offer a rebuttal to a proffered race-neutral explanation can be fatal to his claim. *Johnson v. State*, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002).

We also consider, as did the trial court, that the State did not strike the seven prospective jurors with Hispanic surnames who ultimately served on the jury. The trial court could have considered the fact that these jurors were not struck in determining the State's motive. *See Jones v. State*, 845 S.W.2d 419, 422 (Tex. App.—Houston [1st Dist.] 1993, writ ref'd); *see also Bean*, 816 S.W.2d at 119–20 (State's use of peremptory strikes did not constitute pattern of strikes raising inference of discriminatory intent when State did not use most or all strikes to remove minority venire persons).

Bearing in mind that appellant had the burden of persuasion, we cannot conclude, based on the record before us, that the trial court erred in determining that appellant failed to meet his burden of establishing purposeful discrimination. Therefore, we overrule appellant's sole issue on appeal.

**CONCLUSION**

Having found no error, we affirm the judgment of the trial court.


Judy C. Parker
Justice


Do not publish.

Doss, J., concurs in the result.