**Melvin DAVIS and Beverly Davis, Appellants,**

v.

**Glen MATHIS and Dallas Area Rapid Transit, Appellees.**

No. 05-90-01455-CV.

Court of Appeals of Texas, Dallas.

Dec. 16, 1992.

James Bank, Dallas, for appellants.

Hyatte O. Simmons, Dallas, for appellees.

Before STEWART, BURNETT, and WHITTINGTON, JJ.

## OPINION

STEWART, Justice.

This appeal arises out of a suit for tort damages brought by Melvin and Beverly Davis against a governmental unit of the State of Texas, Dallas Area Rapid Transit (DART), and its employee, Glen Mathis. The case proceeded to trial before a jury and, at the conclusion of the evidence, the trial court directed a verdict in favor of Glen Mathis and DART. In two points of error, Melvin and Beverly contend that the trial court erred in granting directed verdicts on the ground that they failed to comply with the statutory notice requirement of the Texas Tort Claims Act; in their third point, Melvin and Beverly contend that the trial court erred in refusing to rule on their motion to set aside judgment. We overrule all three points and affirm the judgment of the trial court.

## FACTS

The only evidence presented at trial was the testimony of four witnesses. In addition to Melvin and Beverly's testimony, plaintiffs presented a witness to the accident, Deborah Burkhalter. The defense presented the testimony of the bus driver, Glen. On October 11, 1986, Melvin and Beverly were taking Melvin to work when their car ran into the back door of a DART bus at the intersection of Commerce and Lamar in Dallas, Texas. Melvin was driving and they were traveling east on Commerce approaching the intersection. Melvin testified that the light on Commerce was green and, as he was proceeding through the intersection, he suddenly noticed a Dart bus, traveling southbound on Lamar, run through the intersection. Melvin stated that before he could stop, he ran into the back of the bus. Melvin also said that their light was green for the traffic traveling east on Commerce and that, from his location, he could not see the traffic lights on Lamar for traffic traveling southbound on Lamar.

Beverly testified that at 6:00 a.m., she and Melvin were coming into downtown on Commerce. She stated that the light on Commerce was green. She testified that, as they were going through the intersection, the bus came from behind a building and that it was a matter of seconds before their car collided with the bus. Beverly stated that the road was slippery because it was drizzling that morning.

Deborah testified that she was traveling east on Commerce in the lane to the right of Melvin and Beverly. She testified that the Commerce light was green and that, as she proceeded through the intersection, she had to swerve up on the sidewalk to avoid being hit by the bus. She stated that she knew the bus belonged to DART because its buses are yellow. She testified that Melvin and Beverly's car hit the rear door of the DART bus and that the car was banged up in front. Deborah also testified that the police were present at the scene and that she gave the officer a statement.

Glen, the driver of the bus, testified that, at the time of the accident, he had just turned left off of Main onto Lamar traveling south on Lamar. He stated that the speed limit is thirty miles per hour and that he was going ten miles per hour. Glen testified that, as he approached the intersection of Commerce and Lamar, his light was green on Lamar, so he went through the intersection. As he got his bus about thirty feet through the intersection, the back of the bus was struck by Melvin and Beverly's car. Glen testified that he did not see Beverly and Melvin's car approaching, nor did he ever see their car until he heard the crash.

## STANDARD OF REVIEW

In reviewing the granting of a directed verdict, an appellate court must consider all evidence in the light most favorable to the party against whom the instructed verdict was granted and disregard all contrary evidence and inferences. All evidence supporting the non-movant's allegations must be accepted as true, and only when no fact issue remains for the trier of fact to decide will the verdict be allowed to stand. *Qantel Business Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303–04 (Tex.1988); *C.S.R., Inc. v. Industrial Mechanical, Inc.*, 698 S.W.2d 213, 216 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). Thus, a verdict should be directed in favor of a defendant only where the plaintiff fails to present evidence in support of a fact essential to his right to recover or where a defense against the plaintiff's cause of action is conclusively proved or admitted.

## ACTUAL NOTICE

In their first point of error, Melvin and Beverly contend that the trial court erred in directing a verdict for Glen based on their alleged failure to comply with the statutory notice requirement of the Texas Tort Claims Act. In their second point of error, they contend that it was error for the trial court to direct a verdict for DART for the same reason. Because our holding on the second point is necessary to the disposition of the first point, we address their second point first.

As a governmental unit, DART was entitled to receive notice of Melvin and Beverly's claim. TEX.CIV.PRAC. & REM.CODE ANN. § 101.101 (Vernon 1986). Section 101.101 provides:

(a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:

(1) the damage or injury claimed;

(2) the time and place of the incident; and

(3) the incident.

\* \* \* \* \* \*

(c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.101. The parties agree that the burden was on Melvin and Beverly as plaintiffs to show that DART received timely formal or actual notice of their claim because DART filed a verified answer specifically denying receipt of either type of notice. It is also undisputed that Melvin and Beverly did not give DART formal notice within the required statutory time period; hence, the controlling question is whether Melvin and Beverly introduced any evidence that DART received actual notice. Melvin and Beverly assert that the property damage to their car, Glen's knowledge of the collision, and the police investigative report comprise ample evidence from which a jury could reasonably infer that DART had actual notice of their claim. DART asserts that, as a matter of law, Melvin and Beverly failed to present any evidence that DART received notice of their injury, and, therefore, the trial court did not commit error in directing a verdict for DART.

Melvin and Beverly first contend that whether DART received actual notice of their claim is an issue of fact to be submitted to the jury. *Alvarado v. City of Lubbock*, 685 S.W.2d 646, 649 (Tex.1985).

In *Alvarado*, the supreme court did not hold that a trial court could not grant judgment on the issue of actual notice if there was no evidence or insufficient evidence of actual notice to a governmental unit; instead, it articulated the general rule that the existence of a governmental unit's actual notice of a claim is a fact issue. *Id.* If there is no evidence to show the existence of actual notice, a directed verdict on the issue is proper. *Qantel*, 761 S.W.2d at 304.

Next, Melvin and Beverly assert that the testimony was clear that Glen was a DART employee, who was driving a DART bus, and that he knew he was in a collision with their car. They maintain that Glen's actual knowledge of the accident should be imputed to DART because Glen was DART's agent or representative and he was engaged in the business of his principal at the time of the accident under circumstances imposing on an agent or representative the reasonable duty of making the facts known to his superior. *City of Galveston v. Shu*, 607 S.W.2d 942, 945 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). We agree that if Glen had a duty to gather facts and report to DART, his knowledge would be imputed to DART. *Rosales v. Brazoria County*, 764 S.W.2d 342, 345 (Tex.App.—Texarkana 1989, no writ); *City of Texarkana v. Nard*, 575 S.W.2d 648, 652 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.).

In *Shu*, the court's holding that the city had actual notice was based upon evidence that an official investigation of the accident was made by employees of the city who had the duty to investigate or report accidents. *Shu*, 607 S.W.2d at 945–46. In the case at bar, there is no evidence that anyone with the duty to gather facts and report same to DART investigated the accident. Glen's testimony is deficient because there was no evidence that he had a duty to investigate the accident and file a report with DART. There is also no evidence that Glen in fact reported the accident to anyone connected with DART.

■ Finally, Melvin and Beverly argue that the circumstantial evidence that the Dallas police made an official investigation of the accident amounted to evidence of probative force that DART had actual notice, within the Act, of their claim. *Id.* at 946. We disagree. In *Shu,* the court held that an investigation by city police was sufficient to impute actual knowledge to the *city,* but here there is no evidence that a City of Dallas police officer had a duty to report his findings to DART, a separate unit of government, and there is no evidence that the City of Dallas and DART had an agency relationship with each other. For all of the above reasons, we hold that there was legally insufficient evidence to support submission of a fact question concerning actual notice to the jury. Accordingly, the trial court did not err in directing a verdict for DART. We overrule the second point.

■ In their first point of error, Melvin and Beverly contend that the trial court erred in directing a verdict for Glen based on noncompliance with the statutory notice requirement of the Texas Tort Claims Act. They argue that only a governmental unit is entitled to the notice in section 101.101(a) of the Texas Civil Practice and Remedies Code and that this section does not apply to an individual employee who committed the tort. In the alternative, they argue that, if this section applies, formal notice was not required because Glen had actual notice of the accident. TEX.CIV.PRAC. & REM.CODE ANN. § 101.101(c) (Vernon 1986).

We first note that we have found no record of the contents of the motion for directed verdict under attack in this appeal. The only reference to it is in the final judgment of the trial court: "The Court having considered the Motion, directed a verdict on the merits in favor of Defendants for the reason that the Plaintiffs failed to satisfy the statutory prerequisites of Chapter 101 of the Texas Civil Practice and Remedies Code, et seq., with respect to notice." This recitation does not necessarily mean that the trial court based its directed verdict for Glen on non-compliance with the statutory notice requirement found in Chapter 101. It may mean only that, because Melvin and Beverly did not prove either formal or actual notice to DART, the court found they were barred from recovering from Glen.

■ An individual performing a governmental function can be charged with no greater responsibility than that imposed upon the governmental unit. *Steele v. Barbian,* 620 S.W.2d 875, 878 (Tex.Civ. App.—Amarillo 1981, no writ). The statutory preservation of a governmental employee's individual immunity is contained in sections 101.026 and 101.106 of the Texas Civil Practices and Remedies Code. Section 101.026 provides: "To the extent an employee has individual immunity from a tort claim for damages, it is not affected by this chapter." TEX.CIV.PRAC. & REM.CODE ANN. § 101.026 (Vernon 1986). Section 101.106 provides that: "A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim." TEX.CIV.PRAC. & REM.CODE ANN. § 101.106 (Vernon 1986).

■ Melvin and Beverly assert that Glen was acting in a ministerial capacity and that, therefore, he is liable for his tortious conduct to the same extent as a private person. *Baker v. Story,* 621 S.W.2d 639, 645 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.); *Eubanks v. Wood,* 304 S.W.2d 567, 570 (Tex.Civ.App.— Eastland 1957, writ ref'd n.r.e.). However, in *Baker* and *Eubanks,* the governmental employee did not raise protection under sections 101.026, 101.106, or their prior corresponding sections under article 6252–19 of the Texas Revised Civil Statutes. *Baker,* 621 S.W.2d at 645; *Eubanks,* 304 S.W.2d at 569. Section 101.106 provides automatic derivative immunity for a governmental employee. The relevant issue, however, is whether the cause of action against the governmental unit has been decided on its merits. *Brown v. Prairie View A. & M. Univ.,* 630 S.W.2d 405, 408 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). The judge directed a verdict

for DART only after the conclusion of the evidence and the failure of Melvin and Beverly to prove their case as required by DART's verified denial of notice. The judgment recites that "The Court having considered the Motion, directed a verdict on the merits in favor of Defendants." Therefore, the cause of action against DART was clearly decided upon the merits. Because we have already held in the second point that it was not error for the trial court to direct a verdict for DART, and because Glen cannot be charged with any greater responsibility than DART, it follows that, as a matter of law, the trial court did not err in directing a verdict for Glen. We overrule their first point.

■ In their third point of error, Melvin and Beverly contend that the trial court erred in refusing to rule on their motion to set aside judgment. The judgment was signed August 10, 1990. A motion for new trial was filed on August 14 and was overruled by written and signed order on September 18, 1990. Melvin and Beverly filed their motion to set aside judgment on October 9, 1990. A hearing on the matter was not set until October 24, 1990. The trial judge did not rule on the motion; a docket entry reflects that he "passed" the motion. Melvin and Beverly contend that their motion to set aside judgment should be considered a motion to modify, correct, or reform the judgment, which extends the court's plenary power and time for perfecting an appeal in the same manner as a motion for new trial. TEX.R.CIV.P. 329b(g). They note that a motion for new trial is timely if filed "within thirty days after the judgment or other order complained of is signed." TEX. R.CIV.P. 329b(a). They then argue that their motion to set aside judgment is in reality complaining of the trial court's order overruling their motion for new trial and not of the final judgment signed on August 10, 1990, and since the motion to set aside judgment was filed within thirty days of September 18, 1990, the date of the order overruling the motion for new trial, the court had plenary power to hear it within seventy-five days after the judgment was signed. TEX.R.CIV.P. 329b(c).

■ DART contends that the trial court was without plenary power to either hear or to make a ruling on Melvin and Beverly's motion to set aside judgment because the hearing on the motion was not set until more than thirty days after their motion for new trial was overruled by written and signed order. DART relies on rule 329b(e), which states that:

> If a motion for new trial is timely filed by any party, the trial court ... has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first.

TEX.R.CIV.P. 329b(e). We agree that the trial court's plenary power to rule on Melvin and Beverly's motion to set aside judgment expired thirty days after it signed the order overruling their motion for new trial on September 18, 1990; consequently, the court had no jurisdiction to hear their motion to set aside judgment on October 24, 1990. *Id.*

■ We also reject Melvin and Beverly's characterization of their motion to set aside judgment as complaining of the trial court's ruling on their motion for new trial. The character of a motion is to be determined from its substance and not from its caption. *Moncrief v. Harvey*, 805 S.W.2d 20, 23 (Tex.App.—Dallas 1991, no writ); *Brazos Elec. Power Co-op, Inc. v. Callejo*, 734 S.W.2d 126, 128 (Tex.App.—Dallas 1987, no writ). In the instant case, the motion prays that "this Court set aside the judgment in this cause and order a new trial." We conclude that, in spite of its heading and Melvin and Beverly's contrary contention, the character of Melvin and Beverly's motion is actually a motion for new trial and that it is complaining of the judgment on the merits, not the order overruling their motion for new trial. Rule 329b(b) provides: "One or more amended motions for new trial may be filed without leave of court before any preceding motion for new trial filed by the movant is overruled and within thirty days after the judgment or other order complained of is

signed." TEX.R.CIV.P. 329b(b). A supplemental motion for new trial filed without leave of court and more than thirty days after the appellate timetable begins to run is a nullity and cannot be considered by the trial court. *Equinox Enters., Inc. v. Associated Media Inc.*, 730 S.W.2d 872, 875 (Tex.App.—Dallas 1987, no writ). The record does not reflect that Melvin and Beverly filed a motion for leave to file their motion to set aside judgment; therefore, they have no right to have the trial court rule on the motion after the first motion for new trial has already been overruled. We hold that the trial court did not err in failing to rule on the motion to set aside judgment.

We overrule the third point of error and affirm the judgment of the trial court.