# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 00-10361

_____

CHARLES ETTA WILLIAMS,

Plaintiff-Appellant,

VERSUS

DALLAS AREA RAPID TRANSIT,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

February 22, 2001

Before POLITZ, SMITH, and PARKER,
    Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Charles Etta Williams appeals the dismissal of her suit against Dallas Area Rapid Transit ("DART") under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, arguing that the district court erred in finding DART immune from suit under the Eleventh Amendment. She contends both that DART is not an arm of the state for purposes of the Eleventh Amendment and that, even if

DART otherwise were entitled to such immunity, it effectively waived it. Because we agree that DART is not an arm of the state, we do not reach waiver. We reverse the dismissal and remand for further proceedings.

I.

DART is a regional transportation authority organized under TEX. TRANSP. CODE ANN. ch. 452. Williams, a former DART employee, was released as part of a reduction-in-force program. Although DART allegedly found alternative employment positions for younger, lesser-qualified employees, it offered no such

position to Williams, who sued, asserting a claim for wrongful termination in violation of the ADEA. After the parties conducted discovery, the Supreme Court issued *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 82-83 (2000), holding that, because the ADEA is not a proper exercise of Congress's power under the Fourteenth Amendment, the statute cannot abrogate a state's sovereign immunity without an express waiver by the state.

Shortly thereafter, DART moved for dismissal under FED. R. CIV. P. 12(b)(6), or alternatively, for judgment on the pleadings under rule 12(c). Concluding that judgment was not proper under either rule, the court nonetheless dismissed *sua sponte* under rule 12(h)(3) for lack of subject matter jurisdiction, holding that DART, because it had not waived its sovereign immunity, was not amenable to suit in federal court under the ADEA.

## II.

The district court held, as a matter of law, that because "DART is a governmental unit or instrumentality of the state of Texas, . . . it is entitled to assert Eleventh Amendment immunity" and that because DART had not waived that immunity, Williams's ADEA claim failed for lack of subject matter jurisdiction. Williams contests both that DART is entitled to Eleventh Amendment immunity and that it did not effectively waive immunity. When addressing a dismissal for lack of subject matter jurisdiction, we review application of law *de novo* and disputed findings of fact for clear error. *See Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981).

"The Eleventh Amendment . . . bars suits in federal court by citizens of a state against their own state or a state agency or department." *Richardson v. S. Univ.*, 118 F.3d 450, 452

(5th Cir. 1996) (quotation marks omitted). Moreover, "a plaintiff cannot avoid the sovereign immunity bar by suing a state agency or an arm of the State rather than the State itself." *Id.*

When confronted with a governmental entity asserting Eleventh Amendment immunity as an arm of the state, we apply the test established in *Clark v. Tarrant County*, 798 F.2d 736 (5th Cir. 1986). The district court failed to analyze DART's asserted immunity under the *Clark* framework, instead relying on three cases[1] for the proposition that DART is

---

[1] *Anderson v. DART*, Civ. Ac. No. 3:97-CV-1834-BC, 1998 WL 686782 (N.D. Tex. Sept. 29, 1998), *aff'd*, 180 F.3d 265 (5th Cir. 1999) (per curiam) (unpublished), *cert. denied*, 528 U.S. 1062 (1999); *Tolbert v. Vasquez*, Civ. Ac. No. 3:93-CV-1468-X, 1998 U.S. Dist. LEXIS 17616 (N.D. Tex. Mar. 27, 1998), *aff'd*, 163 F.3d 1355 (5th Cir. 1998) (per curiam) (unpublished); *Davis v. Mathis*, 846 S.W.2d 84 (Tex. App§§Dallas 1992, writ denied). These cases are neither binding nor persuasive, because none properly examined the issue of Eleventh Amendment immunity. *See Young v. DART*, Civ. Ac. No. 3:95-CV-2596-X, 1999 U.S. Dist. LEXIS 4470, at *3 (N.D. Tex. Mar. 24, 1999) (declining to follow *Anderson* and *Tolbert* because "neither case delivers a thoughtful and/or detailed argument" with respect to Eleventh Amendment immunity, and ordering the parties to brief the issue under the *Clark* framework).

*Davis*, 846 S.W.2d at 87, held merely that DART "[a]s a governmental unit," was entitled to the protections of the Texas Tort Claims Act ("TTCA"), Tex. CIV. PRAC. & REM. CODE ch. 101. That holding is not probative for our purposes, because the TTCA defines "governmental unit" as

A) this state and all the several agencies of

(continued...)

2

indeed a state agency and therefore is entitled to sovereign immunity. Although all three cases upheld DART's immunity from suit, they are neither binding nor persuasive in this context. The court erred in failing properly to analyze, under *Clark,* DART's amenability to suit.

A proper inquiry under *Clark* considers six factors:

(1)  whether the state statutes and case law characterize the agency as an arm of the state;

(2)  the source of funds for the entity;

(3)  the degree of local autonomy the entity enjoys;

(4)  whether the entity is concerned primarily with local, as opposed to statewide, problems;

---

[1](...continued)
government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;

(B)  a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;

(C)  an emergency service organization; and

(D)  any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

TEX. CIV. PRAC. & REM. CODE § 101.001. The TTCA's definition of "governmental unit" is unquestionably broader than the term "arm of the state," as used for purposes of the Eleventh Amendment, in that it includes cities, counties, school boards, and other governmental entities that are not entitled to Eleventh Amendment immunity. *See, e.g.*, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280-81 (1977) ("[A] local school board such as petitioner is more like a county or city than it is like an arm of the State. We therefore hold that it was not entitled to assert any Eleventh Amendment immunity from suit in the federal courts.").

(continued...)

---

[1](...continued)
*Anderson* and *Tolbert* held that DART, as a "political subdivision of the state" is not a "person" within the meaning of 42 U.S.C. §§ 1981, 1983. *See Anderson v. DART,* 1998 WL 686782 at *7; *Tolbert*, 1998 LEXIS 17616, at *19-20. Although it is not at all certain that "political subdivision," as used by those courts, is coextensive with "arm of the state," as used in analyzing Eleventh Amendment immunity, to the extent that the two terms are interchangeable, the district courts in *Anderson v. DART* and *Tolbert* erred in failing to analyze DART under the *Clark* framework, relying instead on the *Davis* court's characterization of DART. Moreover, while the district court in *Anderson v. DART* did find DART immune from suit under the Eleventh Amendment, that finding is merely an erroneous *dictum*, because the court already had decided the case on the § 1983 issue. *See Anderson v. DART*, 1998 WL 686782, at *7.

(5) whether the entity has authority to sue and be sued in its own name; and

(6) whether the entity has the right to hold and use property.

*Anderson v. Red Riv. Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000). Although none of the six factors is dispositive,[2] some are more important than others: The secondSSthe source of fundsSSis the most important, while the fifth and sixthSSwhether the agency has authority to enter into litigation and hold propertySSare less so. *See Hudson*, 174 F.3d at 681-82. "Rather than forming a precise test, [the *Clark*] factors help us balance the equities and determine as a general matter 'whether the suit is in reality a suit against the state itself.'" *Id.* (quoting *Laje v. R.E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982)).

A proper *Clark* analysis compels the conclusion that DART is not an arm of the state for purposes of the Eleventh Amendment. The first factorSS"whether the state statutes and case law characterize the agency as an arm of the state"SSweighs against immunity, if anything. Neither party can point to definitive authority establishing DART's status under Texas law. As DART points out, it is an "authority" under Texas law, and as such, is a "governmental unit under Chapter 101, Civil Practice and Remedies Code . . . ." TEX. TRANSP. CODE ANN. § 452.052. The statutory characterization of

DART as a "governmental unit" is not probative of DART's status for Eleventh Amendment purposes, however. *See supra* note 1.

On the other hand, Texas statute defines "state government" as "an agency, board, commission, department, or office . . . that: (A) was created by the constitution or a statute of this state; and (B) has statewide jurisdiction." TEX. CIV. PRAC. & REM. CODE § 101.001(5).[3] Thus, the controlling factor in analyzing DART's status as a "state agency" under the TTCA is whether it has statewide jurisdiction.

In its answer, DART conceded that "all of

---

[2] Importantly, neither the state's approach to the issue of sovereign immunity nor the state's characterization of the entity in question controls our inquiry. *See Hudson v. City of New Orleans*, 174 F.3d 677, 684-85 (5th Cir.), *cert. denied*, 528 U.S. 1004 (1999).

[3] DART contends that the characterization of § 101.001(5) is not applicable in the Eleventh Amendment context, because § 101.001's definitions are limited by their terms to chapter 101, which codified the TTCA, which DART argues, deals only with governmental entities' amenability to suit in state courts, ignoring any federal immunity. Section 101.025(a) states that "[s]overeign immunity to suit is waived and abolished to the extent of liability created by this chapter," however, plainly contemplatingSSand by implication, leaving intactSSthe state's immunity under the Eleventh Amendment.

To the extent the statute can be considered ambiguous, the Revisor's Note to that section is instructive: "Only the state and its agencies have sovereign immunity. The revised law omits the phrase 'with reference to units of government' to avoid the implication that sovereign immunity applies to local governmental units." Moreover, DART's abandonment of the TTCA strikes us as peculiar, given its reliance on *Anderson v. DART*, *Tolbert*, and *Davis*, all of which (improperly) construed the TTCA in finding DART immune from federal suit as a "governmental unit." *See supra* note 1.

its operations and actions take place within the counties encompassed in the Northern District of Texas." Nowhere does DART assert that it does have statewide jurisdiction. Thus, at least for purposes of the TTCA, DART is not a state agency. Admittedly, Texas law is not unambiguous with respect to DART's status, but to the extent it favors either party, the first factor weighs against characterizing DART as an arm of the state.

The second factor in the *Clark* inquirySSthe source of the funds for the governmental entitySSis the most important one. *See Hudson*, 174 F.3d at 687. Although we also consider the source of general operating funds for the entity, "because an important goal of the eleventh amendment is the protection of states' treasuries, the most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds." *Richardson*, 118 F.3d at 455 (quoting *McDonald v. Bd. of Miss. Levee Comm'rs*, 832 F.2d 901, 907 (5th Cir. 1987)). It is undisputed that DART receives funding from several sources, including passenger fares, bond revenues, and local sales and use tax revenues,[4] but DART concedes on appeal that it receives no appropriated funds from the state of Texas. It does contend, however, that its authorized use of bond and tax revenues constitutes state funding. We disagree.

DART is authorized by state statute to issue bonds for capital improvement projects; we cannot, however, infer merely from such authorization that the state actually provides funding to DART. The bonds must be approved by the state attorney general and registered by the state comptroller,[5] butSSimportantlySSthe state does not guarantee the bonds. Moreover, although DART is authorized to pledge its tax and operating revenues or mortgage its assets to secure the bonds,[6] DART can point to no statute indicating that the state would back the bonds with its full faith and credit. We find nothing that we can interpret as indicating that the State of Texas funds or guarantees DART's bond obligations.

DART also argues that the characteristics of its sales and use tax render the tax a source of state funding. This argument proves too much, however. While it is true that DART's sales and use tax is administered by the state comptroller and passes through the state treasury before being rebated to DART, municipal taxes in Texas are administered in the same way.[7] Nonetheless, it is undisputed that municipalities are not arms of the state for purposes of the Eleventh Amendment. No. 99-41444, *Evans v. City of Bishop*, 2000 U.S. App. LEXIS 34479, at *5-*7 (5th Cir. Dec. 11, 2000) (per curiam). Moreover, except for the mere administration of the tax by the state, there is nothing to suggest that DART's sales and use tax is anything other than the collection of local funds authorized by a local election to accomplish a local objective.

Finally, DART argues that, if it were unable

---

[4] *See* TEX. TRANSP. CODE ANN. §§ 452.055 (grants), 452.061 (fares), 452.352 (bonds), 452.-401 (sales and use tax).

[5] *See id.* § 452.355.

[6] *See id.* § 452.357.

[7] *Compare* TEX. TAX CODE ANN. §§ 321.301-.302, 321.306, 321.501-.505 (administration provisions for municipal sales and use tax), *with id.* §§ 322.201-.203, 322.301-.305 (administration provisions for special purpose sales and use tax).

to pay a judgment from its own funds, it could seek additional funding from the legislature. DART does not contend that the legislature would be obligated to provide the additional funding, however, and we do not consider "a state's voluntary, after-the-fact payment" of a judgment to be a liability against the state's treasury. *Hudson*, 174 F.3d at 689. There is nothingSSeither in the record or of which we can take judicial noticeSSindicating either that DART receives state funding as a general matter or that a judgment against it would be satisfied out of the state treasury.

The third factor is the degree of local autonomy. DART argues that this factor weighs in its favor, because it is subject to the Texas Sunset Act, TEX. GOV'T CODE. ANN. ch. 325. That fact alone does not dispose of the issue: The Sunset Act deals with the orderly closure of obsolete state agencies, not the oversight of agencies' daily operations. *See id.* § 325.008 (detailing the duties of the Sunset Advisory Commission). Moreover, DART must report to the Sunset Advisory Commission only once every twelve years. *See* TEX. TRANSP. CODE ANN. § 452.453.

DART argues further that, because it is subject to fiscal audits every year and performance audits every fourth year,[8] it falls under state control. Like the Sunset Act, the audit requirements are some evidence of state oversight, but they are not dispositive with respect to the issue of local control.

On the other side of the scale, the responsibility for the "management, operation, and control" of DART is vested in an executive committee,[9] which consists of members appointed by the municipalities served by DART. *See id.* §§ 452.502, 452.-562, 452.572. Thus, the day-to-day operations of DART fall under purely local control. Moreover, any municipality served by DART may hold an election to withdraw from DART if it chooses to do so. *See id.* § 452.651. In this way, the localities also control DART's ultimate disposition. While there is some state oversight of DART's operations, it enjoys considerable local autonomy; this factor therefore weighs slightly against Eleventh Amendment immunity, if anything.

The fourth factor looks at whether DART is concerned primarily with local or statewide problems. DART concedes that its authority is limited to the Dallas-Forth Worth region. Although there is some authority for viewing regional entities merely as local solutions to statewide problems,[10] the fourth factor properly centers on "whether the entity acts for the benefit and welfare of the state as a whole or for the special advantage of local inhabitants." *Pendergrass v. Greater New*

---

[8] *See* TEX. TRANSP. CODE ANN. §§ 452.451, 452.454.

[9] *See id.* § 452.053; *see also id.* §§ 452.101-13 (empowering the executive committee, *inter alia*, to create a budget, invest funds, establish a security force, and appoint auditors and attorneys).

[10] *Cf. Clark*, 798 F.2d at 745. Clark addressed the state probation system, concluding that the relevant statute "was enacted to address a statewide problem and to put control of probationers in the hands of state officers. Dividing the responsibilities into judicial districts is merely an administrative tool for handling a statewide, state program." *Id.* (citation omitted). In contrast, DART is not an administrative division of a statewide transportation systemSSit is an entity unto itself.

*Orleans Expressway Comm'n*, 144 F.3d 342, 347 (5th Cir. 1998) (citing *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 443 (5th Cir. 1985)). DART plainly acts for the benefit of the residents of Dallas, Fort Worth, and the surrounding communities, as distinguished from that of the state as a whole; thus, the fourth factor also cuts against DART.

The fifth and sixth factors weigh in favor of Williams's contention that DART is not an arm of the state. DART has statutory authority both to hold and use property and to sue and be sued. *See* TEX. TRANSP. CODE. ANN. §§ 452.054(b) & (d). Such abilities favor categorization of DART as an independent entity, not an arm of the state. *See Hudson*, 174 F.3d at 691.

Taken as a whole, the *Clark* analysis compel the conclusion that DART is not immune from Williams's claim. Though some of the factors may be indeterminate, none weighs strongly in DART's favor. Moreover, the most important second factor weighs against considering DART an arm of the state. The district court therefore erred in finding DART immune from suit under the ADEA. We REVERSE the dismissal and REMAND for further proceedings.