Cheryl Purdin v. City of Copperas Cove Economic Dev. Corp











 




IN THE
TENTH COURT OF APPEALS
 
 
No. 10-02-00331-CV

     CHERYL L. PURDIN,
                                                                              Appellant
     v.

     COPPERAS COVE ECONOMIC
     DEVELOPMENT CORPORATION,
                                                                              Appellee
 

From the 52nd District Court
Coryell County, Texas
Trial Court # 31,501
                                                                                                                

O P I N I O N
                                                                                                                

      We must decide whether an economic development corporation organized under article
5190.6, section 4A is an “employer” for purposes of application of the Texas Commission on
Human Rights Act.
      The Copperas Cove Economic Development Corporation (“CCEDC”) was created in 1990
under the Development Corporation Act of 1979 (“Act”). Tex. Rev. Civ. Stat. Ann. art.
5190.6, § 4A (Vernon Supp. 2004). The Articles of Incorporation express its purpose:
The Corporation is organized exclusively for the purposes of benefitting and
accomplishing public purposes of, and to act on behalf of, the City of Copperas Cove,
Texas, may issue bonds on behalf of the City of Copperas Cove, Texas and receives,
secures, and disburses tax proceeds from the half cent sales tax for economic
development, and the specific purposes for which the Corporation is organized are the
promotion and development of commercial, industrial and manufacturing enterprises
to promote and encourage employment and the public welfare, pursuant to, Sections
4(a) and 4A of the Development Corporation Act of 1979, as amended. 

      Cheryl Purdin was an employee of CCEDC. She claimed that her supervisor, James
Johnson, made unwelcome comments to and contact with her of a sexual nature. Furthermore,
she claimed that Johnson retaliated against her after she complained to the CCEDC board of
directors. In April 1998, she sued Johnson, the City of Copperas Cove, and CCEDC on
various claims including sexual harassment and retaliation. Purdin non-suited the City in
February 2000, and the trial court, on Purdin’s motion, dismissed Johnson from the suit in
April 2001.
      By amended and supplemental pleadings, Purdin asserted claims against CCEDC solely
under the Texas Commission on Human Rights Act (CHRA). Tex. Lab. Code Ann. ch. 21
(Vernon 1996 & Supp. 2004).


 A trial in March 2002 resulted in a hung jury. In August
2002, CCEDC filed a plea to the jurisdiction claiming that the trial court lacked subject-matter
jurisdiction of Purdin’s CHRA claims because CCEDC was not an “employer” to which the
CHRA applied. The trial court granted the plea in September 2002 and dismissed Purdin’s
claims. She appeals.
 
 
The Issue on Appeal
      The sole question on appeal is one of statutory interpretation: whether CCEDC is a “state
instrumentality” under the CHRA.


 This appears to be an issue of first impression.
      The CHRA specifies which employers are subject to its provisions:
            (8) "Employer" means:
 
(A) a person who is engaged in an industry affecting commerce and who has 15
or more employees for each working day in each of 20 or more calendar weeks in
the current or preceding calendar year;

                  (B) an agent of a person described by Paragraph (A);
 
(C) an individual elected to public office in this state or a political subdivision of
this state; or
 
(D) a county, municipality, state agency, or state instrumentality, regardless of
the number of individuals employed.
Tex. Lab. Code Ann. § 21.002(8) (Vernon Supp. 2004). The word “person” used in
subsections “A” and “B” includes a “corporation, organization, government, or governmental
subdivision or agency, business trust, estate, trust, partnership, association, and any other legal
entity.” Tex. Gov’t Code Ann. § 311.005(2) (Vernon 1998).
      Purdin asserts that CCEDC is a “state instrumentality” under “D.”


 CCEDC counters
that a local, non-profit development corporation created by a city was never intended by the
Legislature to be a “state instrumentality.”
      We review a trial court’s ruling on a plea to the jurisdiction de novo. Mayhew v. Town of
Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998).
Statutory Construction Rules
      We must determine what the Legislature intended by the term “state instrumentality.” The
traditional rules of statutory construction apply. Statutory construction issues are legal
questions reviewed de novo. Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex.
1989). In construing a statute, the reviewing court should determine and give effect to the
Legislature's intent. National Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex.
2000); Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 484 (Tex. 1998). 
The court must first look at the statute's plain and common meaning. Allen, 15 S.W.3d at
527; Fitzgerald v. Advanced Spine Fixation, 996 S.W.2d 864, 865 (Tex. 1999). The court
presumes that the Legislature intended the plain meaning of the words it used. Allen, 15
S.W.3d at 527. And words, unless used as a term of art or connected with a particular trade
or subject matter, are given their ordinary meaning. In re BACALA, 982 S.W.2d 371, 380
(Tex. 1998); Tex. Gov’t Code Ann. § 312.002(a) (Vernon 1998). If the statute is
unambiguous, the reviewing court typically adopts the interpretation supported by the plain
meaning of the statute's words; rules of construction and extrinsic aids should not be applied,
nor extraneous matters inquired into. Id. (extraneous matters); Fitzgerald, 996 S.W.2d at 865-66 (rules of construction and extrinsic aids).
      But if the statute is ambiguous, i.e., the intent of the Legislature is not clear, the reviewing
court then turns to the legislative history of the statute, the nature and object to be obtained by
the statute, and the consequences that would follow from alternative constructions. In re
BACALA, 982 S.W.2d at 380. Also, the court should consider the entire act when construing a
portion of it, e.g., the meaning and use of a term throughout the act. Jones v. Fowler, 969
S.W.2d 429, 432 (Tex. 1998).
      The Code Construction Act provides the factors the court may consider:
In construing a statute, whether or not the statute is considered ambiguous on its face,
a court may consider among other matters the:

            (1) object sought to be attained;
            (2) circumstances under which the statute was enacted;
            (3) legislative history;
(4) common law or former statutory provisions, including laws on the same or similar
subjects;
(5) consequences of a particular construction;
(6) administrative construction of the statute; and
(7) title (caption), preamble, and emergency provision.

Tex. Gov’t Code Ann. § 311.023 (Vernon 1998).
The Parties’ Arguments
      The Legislature has not defined “instrumentality” or “state instrumentality.” To support
their positions about what the words mean, the parties have not conducted an analysis under
the rules of statutory construction. Rather they rely on inferences from statutes, case law, and
the Federal Constitution.
Purdin’s Arguments
      Purdin refers to section 22 of the Act, a section on the corporation’s bond-issuing powers. 
The section is entitled: “Bonds not debt of state or political subdivision; corporation as
constituted authority and instrumentality but not political subdivision or corporation.” 
(Emphasis added). It says, in part:
The corporation when established and created pursuant to the terms of the Act shall be
a constituted authority and an instrumentality (within the meaning of those terms in
the regulations of the treasury and the rulings of the Internal Revenue Service
prescribed and promulgated pursuant to Section 103 of the Internal Revenue Code of
1954, as amended) and shall be authorized to act on behalf of the unit under whose
auspices it is created for the specific public purpose or purposes authorized by such
unit . . . .

Tex. Rev. Civ. Stat. Ann. art. 5190.6, § 22 (Vernon Supp. 2004) (emphasis added). 
Apparently, the regulations of the Treasury Department and the rulings of the Internal Revenue
Service use the terms “constituted authority” and “instrumentality” when discussing tax
implications for certain governmental entities, and the Legislature, by using the terms in
section 22, indicated its intention that development corporations come under those regulations
and rulings. Purdin points out that a development corporation is called an “instrumentality” in
the title to section 22 and, in the body of the section, is designated an “instrumentality” for
IRS purposes. Purdin contends, without authority, that “instrumentality” means the same in
the Act as it does in the CHRA.
      Purdin also relies on Tarrant County Hosp. Dist. v. Henry, 52 S.W.3d 434 (Tex.
App.—Fort Worth 2001, no pet.). Henry sued a hospital district under the CHRA. Id. at 434. 
The Fort Worth court held that the district was a “state instrumentality” under section
21.002(8)(D). Id. at 446. The court relied on the definition of “instrumentality” in Black’s
Dictionary—“[a] means or agency through which a function of another entity is accomplished,
such as a branch of a governing body”—and concluded that a hospital district came within the
definition. Id. at 445-46; Black’s Law Dictionary 802 (7th ed. 1999). The court noted that
it is inconsistent to find that a hospital district is not a branch of the State when (a) it has been
created under the authority of the Texas Constitution and the Legislature, and (b) it has
sovereign immunity. Id. at 446. Similarly, development corporations have been created under
the authority of the Legislature and have sovereign immunity. Tex. Rev. Civ. Stat. Ann.
art. 5190.6, § 4A(j); Rayl v. Borger Economic Development Corp., 963 S.W.2d 109, 114
(Tex. App.—Amarillo 1998, no pet.). Thus, arguing from Henry, Purdin contends they are
also “state instrumentalities” under the CHRA.
      Purdin also cites our holding in Crow v. Rockett Special Utility Dist., in which we found
that a special utility district was a “state instrumentality” under the CHRA because it was
created under the authority of the Texas Constitution and is an agent of the State exercising the
State’s police powers. Crow v. Rockett Special Utility Dist., 17 S.W.3d 320, 325 (Tex.
App.—Waco 2000, pet. denied). We found that “agent” is a synonym for “instrumentality.” 
Id. (citing The New American Roget’s College Thesaurus 260 (rev. ed. 1978)).



      Purdin concludes by pointing out that: (a) CCEDC was created by a city, which is a
political subdivision of the State, (b) its board of directors was appointed by the city, (c) it
administers sales taxes levied by the city, and (d) it is subject to the open records and meetings
laws. Tex. Rev. Civ. Stat. Ann. art. 5190.6, § 4A(b), (c), (f), 11(b), 14A (Vernon Supp.
2004). She asks: “How is it that a sales-tax funded entity that has income on its bonds exempt
from IRS taxation because it is a state instrumentality, that must comply with open meetings
and records laws, and which benefits from the immunities and liability limitations afforded by
the Texas Tort Claims Act, can suddenly consider itself non-governmental when it comes to
the discrimination law?” (Brief of Appellant p. 8).
 
CCEDC’S Arguments
      CCEDC responds with several arguments. 
First Argument: 
      CCEDC says it is an instrumentality of the city, not of the state. It points out that
development corporations are created by cities, which then exercise control over them by
appointing their boards of directors. Tex. Rev. Civ. Stat. Ann. art. 5190.6, § 4A(b), (c). 
Furthermore, development corporations are not political subdivisions, and they do not have
some traditional powers of political subdivisions, e.g., to raise tax revenue or to exercise
eminent domain or police powers. Id. art. 5190.6, § 4A(d), (g), 22 (Vernon Supp. 2004). 
Second Argument: 
      CCEDC asserts that, because it would not be a “state instrumentality” under Eleventh
Amendment law, it is not one under the CHRA. CCEDC argues that it resembles
governmental entities that the courts have determined are not “arms of the state” under
Eleventh Amendment law, which prohibits a suit against a state in federal court by a citizen of
either another state or a foreign state. U.S. Const. amend. XI. The bar also applies to a suit
against a state by its own citizen. Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S.Ct. 1347,
1355-56, 39 L.Ed.2d 662 (1974); San Antonio Indep. School District v. McKinney, 936
S.W.2d 279, 281 (Tex. 1996). “States” may include certain “state agents and state
instrumentalities” if they are “arms of the state.” Regents of the University of California v.
Doe, 519 U.S. 425, 429-30, 117 S.Ct. 900, 903-04, 137 L.Ed.2d 55 (1997). Of “considerable
importance” in determining if Eleventh Amendment immunity applies is whether the state
would be obligated to pay a money judgment against the entity. Id., 519 U.S. at 431, 117
S.Ct. at 904. CCEDC cites Williams v. Dallas Area Rapid Transit, 242 F.3d 315 (5th Cir.
2001), and McKinney, 936 S.W.2d at 279.
Third Argument:
      CCEDC attacks Purdin’s argument that the word “instrumentality” in article 5190.6, § 22
has the same meaning as “state instrumentality” in the CHRA. CCEDC points out that the
word “state” is not contained in section 22. Then it cites to a 1957 administrative ruling of the
IRS construing section 103 of the Internal Revenue Code. Rev. Rul. 57-187, 1957-1 C.B. 65,
1957 WL 11962 (RRU). Section 103 excludes from gross income the interest on “any State or
local bond,” which is defined as “an obligation of a State or political subdivision thereof.” 26
U.S.C. § 103 (2002). Ruling 57-187 held that an Industrial Development Board, created by
Alabama statute and fulfilling purposes similar to development corporations, falls under the
“political subdivision” umbrella of section 103, because the bonds “are considered issued in
behalf of a municipality, a political subdivision of the State.” CCEDC concludes that the
Ruling supports its position that entities like development corporations are instrumentalities of
the city, not “state instrumentalities.”
Fourth Argument:
      Next, CCEDC argues that, although development corporations have characteristics that are
usually associated with governmental entities, such as requirements under the open meetings
and open records acts and the administration of sales taxes, that does not necessarily establish
that they are “state instrumentalities.”
 

Fifth Argument:
      Finally, CCEDC argues that, as a matter of public policy, it should be excluded from
“state instrumentalities.” It says that under section 21.002(8)(A), employers not specifically
listed in other subsections are included under the CHRA only if they have fifteen or more
employees. So, to allow a small employer like CCEDC to be sued under “D” circumvents the
Legislature’s intent in enacting “A” to shield small employers from suit.
Analysis
      The meaning of “state instrumentality” and whether development corporations are
included is not clearly expressed in the CHRA. Therefore, we may examine, to the extent
possible, eight factors:
            •    any legislative history of the statute, In re BACALA, 982 S.W.2d at 380; Tex.
Gov’t Code Ann. § 311.023;
 
            •    the nature and object to be obtained by the statute, Id.;
            •    the consequences that would follow from alternative constructions, Id.;
            •    the circumstances under which the statute was enacted, Tex. Gov’t Code Ann. §
311.023;
 
            •    the common law or former statutory provisions, including laws on the same or
similar subjects, Id.;
 
            •    any administrative construction of the statute, Id.;
 
            •    the title (caption), preamble, and emergency provision, Id.; and
 
            •    the entire act, including the meaning and use of a term throughout the act,
Fowler, 969 S.W.2d at 432.
      Reviewing under these factors, we have not found any helpful legislative history. And the
term “state instrumentality” is not used elsewhere in the statutes. Neither the title, preamble,
or emergency provisions of the statute provide assistance. Nor is there any common law
defining the term.
      As for any administrative construction of the statute, Purdin received a “right to sue”
letter from the Commission on Human Rights. Tex. Lab. Code Ann. § 21.252 (Vernon
1996). Therefore, the Commission exercised jurisdiction over CCEDC.
      The circumstances that would follow from alternative constructions are (a) under Purdin’s
construction, more employees of certain government-related entities would be protected under
the CHRA and (b) under CCEDC’s construction, fewer employees would be protected.


 
      The nature and object of the CHRA, and to an extent the circumstances under which it was
enacted, are expressed in section 21.001 of the act:
            The general purposes of this chapter are to:
 
(1) provide for the execution of the policies of Title VII of the Civil Rights Act of
1964 and its subsequent amendments (42 U.S.C. Section 2000e et seq.);
 
(2) identify and create an authority that meets the criteria under 42 U.S.C. Section
2000e-5(c) and 29 U.S.C. Section 633;
 
(3) provide for the execution of the policies embodied in Title I of the Americans with
Disabilities Act of 1990 and its subsequent amendments (42 U.S.C. Section 12101 et
seq.);
 
(4) secure for persons in this state, including persons with disabilities, freedom from
discrimination in certain employment transactions, in order to protect their personal
dignity;
 
(5) make available to the state the full productive capacities of persons in this state;

            (6) avoid domestic strife and unrest in this state;

            (7) preserve the public safety, health, and general welfare; and

            (8) promote the interests, rights, and privileges of persons in this state.
Tex. Lab. Code Ann. § 21.001 (Vernon 1996). The broad interests expressed in this section
support the conclusion that the Legislature intended for the prohibitions in chapter 21 to be
generally applied. Id. The wording of the limitation on private-sector employees, i.e.,
“engaged in an industry affecting commerce and who has 15 or more employees,” tends to
show that the term “state instrumentality” was intended to include entities regardless of size
which exercise functions usually associated with state government. Id. § 21.002(8)(A), (D).
      Finally, examining the entire act, former statutory provisions, and laws on the same or
similar subjects, we find that when the CHRA was codified in the Labor Code in 1993,
subsection 21.002(8)(D), then “6(C),” provided: “a county, municipality, state agency, or
state instrumentality, including a public institution of education, regardless of the number of
individuals employed.” “State agency” was not defined. In 1997, by amendment, the phrase
“including a public institution of education” was deleted from “D,” and subsection “14” was
enacted, which reads:
"State agency" means:
 
(A) a board, commission, committee, council, department, institution, office, or
agency in the executive branch of state government having statewide jurisdiction;

(B) the supreme court, the court of criminal appeals, a court of appeals, or the State
Bar of Texas or another judicial agency having statewide jurisdiction; or

            (C) an institution of higher education as defined by Section 61.003, Education Code.
Id. § 21.002(14) (Vernon Supp. 2004). The Legislature went to great lengths in subsections
“8(D)” and “14” to include a wide array of governmental entities under the CHRA. The list
includes elected officials, counties, municipalities, agencies in the executive branch if they
have statewide jurisdiction, courts, judicial agencies if they have statewide jurisdiction, and
institutions of higher learning. Each of these performs public functions defined by the
Legislature.
      We conclude from our review of the eight factors that the Legislature intended “state
instrumentalities” to be a category which includes entities, other than those listed in
subsections “8(D)” and “14,” that perform public functions as defined by the Legislature. 
Thus, we turn to an inquiry of what functions the Legislature has authorized CCEDC to
perform, and whether those functions are ones usually or customarily performed by state
government, i.e., state functions. In particular, we must determine if economic
development—the primary function of development corporations under the Act—is a state
function.
       Based on express language used by the Legislature, we find that economic development
has been determined to be a function of state government. The “Findings and Construction” of
section 3 of the Act are:
            (a) It is hereby found, determined, and declared:
 
(1) that the present and prospective right to gainful employment and general
welfare of the people of this state require as a public purpose the promotion and
development of new and expanded business enterprises and the promotion and
development of job training;
 
(2) that the existence, development, and expansion of business, commerce,
industry, and job training are essential to the economic growth of the state and to
the full employment, welfare, and prosperity of its citizens;
 
(3) that the assistance provided by industrial development corporations in
promoting higher education opportunities will encourage and foster the
development and diversification of the economy of the state and the elimination of
unemployment and underemployment in the state;
 
(4) that the means and measures authorized by this Act and the assistance
provided in this Act, especially with respect to financing, are in the public
interest and serve a public purpose of the state in promoting the welfare of the
citizens of the state economically by the securing and retaining of business
enterprises and the resulting maintenance of a higher level of employment,
economic activity, and stability;
 
(5) that community industrial development corporations in Texas have themselves
invested substantial funds in successful industrial development projects and have
experienced difficulty in undertaking such additional projects by reason of the
partial inadequacy of their own funds or funds potentially available from local
subscription sources and by reason of limitations of local financial institutions in
providing additional and sufficiently sizable first mortgage loans; and
 
(6) that communities in this state are at a critical disadvantage in competing with
communities in other states for the location or expansion of such enterprises by
virtue of the availability and prevalent use in all other states of financing and
other special incentives; therefore, the issuance of revenue bonds by corporations
on behalf of political subdivisions of the state as hereinafter provided for the
promotion and development of new and expanded business enterprises to provide
and encourage employment and the public welfare is hereby declared to be in the
public interest and a public purpose.
 
(b) This Act shall be liberally construed in conformity with the intention of the
legislature herein expressed.
Tex. Rev. Civ. Stat. Ann. art. 5190.6, § 3 (Vernon Supp. 2004) (emphasis added). Thus,
the section repeatedly says that it was enacted to benefit the people of Texas and is for the
public welfare of the State, and was not enacted merely as a convenience for cities and counties
to benefit themselves.
      That economic development is a function of state government is also shown by the fact
that, in 1989, section 1 of an amending statute found:
FINDINGS AND POLICY. It is the finding, policy, intent, and determination of the
legislature that:
 
(1) Texas has continuing needs for the creation of new job opportunities and
enhancement of existing job opportunities;
 
(2) it is desirable that economic development take place to stimulate the economy
of local and state government;
 
(3) local government should have the necessary powers to enable it to take the
lead in economic development, and local self-determination should be maintained
to the maximum extent practical;
 
(4) protecting the environment and other natural resources is essential to the
orderly and proper economic development of an area and should be given high
priority;
 
(5) enhancement of tax revenues to other local and state governmental entities will
occur as a result of successful economic growth; and 
 
(6) successful economic development depends on a viable working relationship
between the public and private sectors and it is the intent of this Act to foster and
further that cooperative effort. 

Act of June 14, 1989, 71st Leg., R.S., ch. 877, § 1, 1989 Tex. Gen. Laws 3871. Here the
Legislature made it clear that economic development is a goal and function of government at
all levels.
      Additional support for our finding comes from the fact that, when the Act was amended in
1991, section 1 of the amending statute stated:
The legislature finds for all constitutional and statutory purposes that the authority
granted by this Act is for the public purposes of development and diversification of
the economy of the state and an eligible city, the elimination of unemployment or
underemployment in the state and an eligible city, and the expansion of commerce in
the state and that this Act accomplished those public purposes.

Act of March 28, 1991, 72nd Leg., R.S., ch. 11, § 1, 1991 Tex. Gen. Laws 37.

      Lastly, CCEDC’s own Articles of Incorporation support our finding, because it provides
that CCEDC exists for the “public purpose . . . [of] the promotion and development of
commercial, industrial and manufacturing enterprises to promote and encourage employment
and the public welfare.” Notably, the employment and welfare goals are not limited to
residents of the City, but apply to the “public” generally.
      From these provisions, we determine that the stated legislative goals of the Act and the
public purposes of CCEDC favor a conclusion that development corporations are “state
instrumentalities.” But, in addition, we may rely on common sense and public policy. We see
no logical reason why the Legislature would have intended to exclude entities like development
corporations (and special utility districts, hospital districts, and independent school districts)
from the CHRA. By including an extensive list of government-related individuals and entities
in subsections “8(D)” and “14,” by specifically not limiting the description of governmental
entities to those with fifteen or more employees, and by providing a separate category to
include other undefined entities, the logical conclusion is that the Legislature intended for the
prohibitions against discrimination contained in the CHRA to apply to most if not all entities
performing public functions.
      We conclude that economic development corporations under the Act perform public
functions and are “state instrumentalities.” Other local entities of government, such as
hospital and special utility districts, have been found to be “state instrumentalities.” Henry, 52
S.W.3d at 446; Rockett, 17 S.W.3d at 325. Under the reasoning of the Fort Worth Court of
Appeals, with which we agree, the definition of “instrumentality” in Black’s Dictionary—“[a]
means or agency through which a function of another entity is accomplished, such as a branch
of a governing body”—leads to our conclusion. And because CCEDC was created under
authority granted by the Legislature to enhance economic development, which is a state and
local function, Henry supports our conclusion.
      We arrive at our construction of “state instrumentality” after considering CCEDC’s
arguments, which do not persuade us. To begin, there are a number of difficulties with its first
argument that CCEDC is an instrumentality of the city, not the state.
            •    The argument fails to consider the public nature of the duties of CCEDC under
section 3 of the Act, as we have outlined.
 
            •    CCEDC’s assertion that there is little or no involvement of the State with
development corporations is misplaced. For example:
 
                        •    The Act creates a Texas Small Business Industrial Development
Corporation to “carry out the public purposes of the act.” Tex. Rev.
Civ. Stat. Ann. art. 5190.6, § 4(b).
 
                        •    The Department of Labor, “with the assistance of the Texas Commission
on Environmental Quality, may encourage the cleanup of contaminated
property by corporations created under this section through the use of
sales and use tax proceeds,” which requires the approval of the citizens
of the city. Id. art. 5190.6, § 4A(t).
 
                        •    Each development corporation created by a city must submit an annual
one-page report to the State Comptroller stating information such as
objectives, revenues, expenditures, assets, and “any other information
the comptroller requires to determine the use of the sales and use tax”
collected. Id. art. 5190.6, § 4C(a), (b).
 
                        •    The Comptroller may impose a monetary penalty for late filing of the
report. Id. art. 5190.6, § 4C(d).
 
                        •    “The [Labor department] shall approve the contents of any lease, sale, or
loan agreement made under this Act. The department shall prescribe
rules and regulations setting forth minimum standards for project
eligibility and for lease, sale, and loan agreements and guidelines with
respect to the business experience, financial resources, and
responsibilities of the lessee, purchaser, or borrower under any such
agreement, but in no event shall the department approve any agreement
unless it affirmatively finds that the project sought to be financed is in
furtherance of the public purposes of this Act. Appeal from any adverse
ruling or decision of the department under this subsection may be made
by the corporation to the District Court of Travis County. . . . The
department by rule shall require corporations to file fee schedules and
bond procedures. . . .” Id. art. 5190.6, § 24(a), (e).
 
                        •    At least once in each 24-month period, representatives of both the city
and the development corporation must attend a training seminar
sponsored by the Labor Department. Id. art. 5190.6, § 39.
 
These provisions lead to the conclusion there is significant involvement at the
State level in the oversight and operation of development corporations.
 
            •    The fact that other entities, such as hospital districts and special utility districts,
which have been held to be “state instrumentalities” under the CHRA, are also
political subdivisions created by the Texas Constitution, does not inherently
preclude non-political subdivisions from being “state instrumentalities.” If that
were true, the Legislature would have used the term “political subdivision” in
section 21.002(8)(D) instead of “state instrumentality.”
      CCEDC’s second argument is that it can be inferred from Eleventh Amendment law that it
is not a “state instrumentality.” In the cases it cites, however, the question was not whether
the entities were “state instrumentalities” under Texas law. Rather, the question was whether
they were entitled to Eleventh Amendment immunity under the law applicable thereto, i.e.,
whether they are “arms of the state.” CCEDC’s argument fails because the questions of
whether an entity is a “state instrumentality” and whether it is an “arm of the state” under
Eleventh Amendment law are separate; i.e., an entity may be a “state instrumentality” even
though it does not have Eleventh Amendment immunity as an “arm of the state.” Thus, this
argument does not answer our inquiry.
      In Dallas Area Rapid Transit, the Fifth Circuit found that whether DART was a
“governmental unit” under Texas statutes is not the relevant inquiry under the Eleventh
Amendment, which requires a determination that the entity is an “arm of the state.” Dallas
Area Rapid Transit, 242 F.3d at 319. “Arm of the state” is narrower than “governmental
unit” and does not include cities, counties, and school boards. Id. at 318 n.1. The court
applied a six-part test to determine whether DART was an “arm of the state,” immune from
suit under the Eleventh Amendment. Id. at 319–22.


 The court held that DART is not an
“arm of the state.” Id. at 322.
      In McKinney, the Supreme Court held that an independent school district is “more like a
county or city than it is like an arm of the state,” and therefore it is not entitled to Eleventh
Amendment immunity. McKinney, 936 S.W.2d at 280. The Court pointed out that the
Eleventh Amendment does not apply to “political subdivisions” such as counties and cities. 
Id. at 282.
      The third argument made by CCEDC is that “instrumentality” does not have the same
meaning under the Act and the CHRA. Our holding does not depend on their being the same,
and it does not resolve the issue.
      Although we agree with CCEDC’s fourth argument that the fact that development
corporations have characteristics usually associated with governmental entities does not
necessarily establish that they are “state instrumentalities,” our agreement does not undermine
our holding.
      Finally, in its fifth argument, CCEDC argues that public policy directs that small, local
entities like CCEDC should not be subjected to the liability potential of the CHRA. We have
found, however, that the Legislature intended that employees performing public services
should be covered under the CHRA.
      Applying the rules of statutory construction, and rejecting CCEDC’s arguments, we
sustain Purdin’s issue.
Conclusion
      We hold that, under the Texas Commission on Human Rights Act, Copperas Cove
Economic Development Corporation is a “state instrumentality” and thus an “employer.” We
sustain Purdin’s issue, reverse the order granting the plea to the jurisdiction, and remand the
cause to the trial court for further proceedings consistent with this opinion.



                                                                   BILL VANCE
                                                                   Justice


Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna



      (Chief Justice Gray dissenting)
Reversed and remanded
Opinion delivered and filed July 21, 2004

[CV06]