

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00355-CR

---

HECTOR DE JESUS VILLATORO-GUEVARA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 368th District Court
Williamson County, Texas
Trial Court No. 21-1131-K368, Honorable Rick Kennon, Presiding

---

August 15, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Following a plea of not guilty, Appellant, Hector De Jesus Villatoro-Guevara, was convicted by a jury of murder with an affirmative finding on use of a deadly weapon and punishment was assessed at confinement for forty-five years.[1]  By three issues, Appellant challenges his conviction as follows:  (1) the trial court erred in overruling his objection during voir dire to the prosecutor injecting his personal opinion on use of deadly force; (2)

---

[1] TEX. PENAL CODE ANN. § 19.02(b)(1).

the evidence is insufficient to support his conviction because no rational factfinder could have found against him on his claim of self-defense; and (3) the jury charge was erroneous by including a paragraph emphasizing his status as a trespasser when there was no evidence to suggest he trespassed.[2] We affirm.

## BACKGROUND

Appellant and Alicia Heredia became romantically involved around 2013 and share two daughters. After their relationship ended, she began dating the victim in 2018, and he eventually moved into her home. Alicia and Appellant co-parented and he occasionally went to her home to work on the yard or perform routine maintenance. The record reflects Appellant and the victim did not get along and had engaged in numerous hostile encounters which never culminated in physical violence.

Appellant kept a firearm and ammunition in his truck to protect himself and his daughters. He explained that he purchased the firearm after an unrelated incident in which he and his daughters had been shot at while in his truck.

On July 7, 2021, Appellant and his daughters were shopping at H.E.B. where they encountered the victim and Alicia. While Appellant was in the check-out line, the victim, who was waiting for Alicia in the front of the store, blew kisses at him and began insulting him. Appellant gestured the middle finger to the victim and walked toward him

---

[2] Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of the Third Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

aggressively with fists raised. The victim backed away and Alicia intervened to prevent a potential fight in front of her daughters.[3]

On his way home from H.E.B., Appellant drove out of his way to Alicia's home to confront the victim and to reason with him about the constant provocations. He testified he exited his truck and walked onto the driveway toward the victim who was unloading groceries.[4] He described the victim as aggressive and testified the victim approached him to engage in a fistfight. Fearing for his life,[5] Appellant went to his truck and retrieved his firearm and ammunition. He fired warning shots but when the victim continued toward him, he shot him. According to Alicia, the victim leaned up against a parked car then fell to the ground. Appellant approached him and continued shooting downward toward him. He then returned to his truck and left.

Appellant drove to Alicia's father's house to drop off his daughters and tried to leave the firearm with him, but he refused to take it. He conceded he told Alicia's father that he had "messed up" but never mentioned he had acted in self-defense.

---

[3] The incident was captured on H.E.B.'s surveillance cameras and the footage was admitted into evidence.

[4] The driveway is closed by a gate which Appellant testified was open, but which Alicia claimed was closed. Appellant claimed Alicia lied.

[5] Appellant offered conflicting versions on whether the victim's hands were tucked under his shirt or in view making it difficult for him to ascertain whether the victim was armed. Alicia testified the victim's hand were visible and by his side as he approached Appellant. She also testified the victim did not own any weapons.

**ISSUE ONE—IMPROPER COMMENT DURING VOIR DIRE**

Appellant asserts the prosecutor, "under the guise of a hypothetical," injected his person opinion of Appellant's guilt which resulted in harm and the denial of a fair trial. We disagree.

During voir dire, a venireperson suggested a scenario and asked whether deadly force would be justified. The prosecutor responded as follows:

> That gets into the circumstances of each offense as to what is going on and what is happening. If a known murderer is running at you, then that's your frame of mind. That's what you get to think about. But if it's somebody in a bar and you're just fighting and someone has nothing in their hands and they're running at you to fight, does that privilege you to use deadly force? Anyone think it does?

Various venirepersons answered "no" and the prosecutor then discussed self-defense and the reasonableness of a response to the use of deadly force which prompted the following exchange between him and a venireperson:

> Venireperson: Question about the bar fight. So someone runs at me in a bar, I pull a gun, I point it at him, he keeps running. Am I justified at that point in using the weapon?
>
> [Prosecutor]: Probably not.
>
> [Defense counsel]: Objection, Your Honor. That's for the fact finders to determine whether reasonableness of the force used on that person. That was injecting the opinion of the prosecutor.
>
> The Court: I'll overrule that . . . .
>
> [Prosecutor]: Thank you, Judge. And, again, what we get back to is the reasonableness. The community sets a standard for what is reasonable. So if that case went to trial, 12 people could hear that and then decide whether the conduct was reasonable. . . .

The conduct of voir dire examination is left to the sound discretion of the trial court. *Dowden v. State*, 758 S.W.2d 264, 274 (Tex. Crim. App. 1988). Concerning the propriety of questioning, appellate courts must keep in mind that great latitude should be allowed to allow both sides to evaluate the desirability of a venireperson. *McCarter v. State*, 837 S.W.2d 117, 121 (Tex. Crim. App. 1992). Illustrating the law with a hypothetical situation is permissible as long as the hypothecator correctly explains application of the law. *Mori v. State*, No. 05-97-00166-CR, 1999 Tex. App. LEXIS 804, at *20–21 (Tex. App.—Dallas 1999, pet. ref'd) (mem. op., not designated for publication).

A prosecutor may not inject personal opinions in statements or argument to the jury. *Johnson v. State*, 698 S.W.2d 154, 167 (Tex. Crim. App. 1985). *Ybarra v. State*, Nos. 14-03-00655-CR, 14-03-00656-CR, 2004 Tex. App. LEXIS 9488, at *4–5 (Tex. App.—Houston [14th Dist.] Oct. 28, 2004, pet. ref'd) (mem. op., not designated for publication) (holding prosecutor's statements were not his belief the defendant was guilty). In *Modiesette v. State*, No. 05-98-00638-CR, 1999 Tex. App. LEXIS 5381, at * 5–6 (Tex. App.—Dallas 1999, no pet.) (mem. op., not designated for publication), the court found no abuse of discretion in allowing a rhetorical question during voir dire which when read in context was found not to infer the defendant was guilty.

In the underlying case, after defense counsel's objection was overruled, the prosecutor explained that a response to use of deadly force must be reasonable and that "12 people . . . decide whether the conduct is reasonable." Read in context, the hypothetical exchange between the venireperson and the prosecutor did not inject the prosecutor's personal opinion that Appellant was guilty; rather, it illustrated a correct application of the law on self-defense and the jury's role in determining if Appellant's

5

conduct was reasonable.  *See Bean v. State*, 816 S.W.2d 115, 120 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (finding that prosecutor's hypothetical to jury panel on reasonable doubt and explanation that reasonable doubt was "up to the jurors to decide" was not a personal opinion regarding defendant's guilt).  We conclude the trial court did not abuse its discretion in overruling Appellant's objection.  Issue one is overruled.

**ISSUE TWO—SUFFICIENCY OF THE EVIDENCE AND SELF-DEFENSE**

Appellant contends the evidence is insufficient to support a conviction for murder because no rational factfinder could have rejected his claim of self-defense.  He asserts his belief that deadly force was immediately necessary to protect himself against the victim's use or attempted use of deadly force was reasonable under the circumstances.  We disagree.

**APPLICABLE LAW**

Self-defense is a justification defense.  *Alonzo v. State*, 353 S.W.3d 778, 781 (Tex. Crim. App. 2011).  "[A] person is justified in using force against another when and to the degree the actor believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force."  TEX. PENAL CODE ANN. § 9.31(a); *Braughton v. State*, 569 S.W.3d 592, 606 (Tex. Crim. App. 2018).  "Reasonable belief" is a belief that would be held by an ordinary and prudent person in the same circumstances as the actor.  TEX. PENAL CODE ANN. § 1.07(a)(42).

Self-defense is a confession and avoidance defense because it requires the defendant to admit to his otherwise illegal conduct.  *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020).  It is a fact issue to be determined by a jury and "'a jury verdict of

6

guilty is an implicit finding rejecting the defendant's self-defense theory.'" *Braughton*, 569 S.W.3d at 609; *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

A defendant claiming self-defense has the initial burden to produce evidence supporting it, while the State has the burden to disprove it. *Zuliani v. State*, 97 S.W.3d 589, 594–95 (Tex. Crim. App. 2003). The State's burden does not, however, require the production of evidence; rather, only that it proved its case beyond a reasonable doubt. *Id* at 594.

Self-defense does not apply to verbal provocation alone. TEX. PENAL CODE ANN. § 9.31(b)(1); *Walters v. State*, 247 S.W.3d 204, 213 n.40 (Tex. Crim. App. 2007). It also does not apply if the defendant provoked the other person. TEX. PENAL CODE ANN. § 9.31(b)(4).

### STANDARD OF REVIEW

A reviewing court views the evidence to support a jury's rejection of self-defense under *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *Hutchins v. State*, No. 03-01-00670-CR, 2002 Tex. App. LEXIS 8808 at *2 (Tex. App.— Austin Dec. 12, 2002, pet. ref'd) (mem. op., not designated for publication). In resolving the sufficiency of the evidence of a self-defense claim, a court does not look to whether the State presented evidence which refuted self-defense; rather the reviewing court determines whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and also would have rejected the claim of self-defense beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914. When the record

7

supports conflicting inferences, a reviewing court presumes the factfinder resolved the conflicts in favor of the verdict. *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015).

To sustain a murder conviction, the State was required to prove Appellant intentionally or knowingly caused the victim's death by shooting him with a firearm. Appellant admitted he killed the victim by shooting him but claimed he did so in self-defense. He expressed that his fear of the victim was due to the victim's muscular physique compared to his stature and explained he suffered from a foot injury which made it impossible to retreat from the victim when Appellant felt threatened. He testified several times that his intention in arming himself was to make the victim respect him and feel fear. He described a history between them of verbal provocations and the victim's repeated gesture of blowing kisses at him to bully him. Their arguments, however, never escalated into physical altercations. During a previous confrontation, it was Appellant who brandished a saw with a jagged edge and a rod as potential weapons.

At H.E.B., Appellant responded to the victim's gesture of blowing kisses and hurling insults by attempting to instigate a fistfight from which the victim backed away. There was no evidence of threats of death or serious bodily injury by the victim against Appellant. Appellant arrived at Alicia's house approximately five minutes after the incident at H.E.B.

Appellant testified he never intended to hurt the victim. Intent to kill, however, may be inferred from circumstantial evidence of a suspect's acts, words, and conduct. *Ex parte Weinstein*, 421 S.W.3d 656, 668 (Tex. Crim. App. 2014); *Hart v. State*, 89 S.W.3d

61, 64 (Tex. Crim. App. 2002). Here, Appellant's intent can be inferred from his use of a firearm. *See Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986) (noting the most obvious and easiest cases to prove intent to kill are those in which a firearm is used).

Although Appellant testified that he believed deadly force was necessary when he confronted the victim in the driveway because he could not see his hands, Alicia testified the victim's hands were by his side.[6] Despite Appellant's claim of living in fear of the victim, there was no reason to believe at that moment that the use of deadly force was necessary to defend himself. Words or gestures by the victim were insufficient to justify the use of deadly force. Additionally, Appellant's testimony that he armed himself to gain the victim's respect and instill fear in him negates a claim of self-defense.

The defense also presented testimony from Alicia's next-door neighbor to support Appellant's self-defense theory by portraying the victim as the aggressor. The neighbor testified the victim walked down the driveway and began yelling at Appellant and he overheard them arguing. On cross-examination, he testified Appellant was near his truck when he first started shooting but walked toward the victim after he fell to the ground and continued shooting him. The autopsy report confirmed six gunshot wounds to the head, neck, chest, back, and upper extremity.

The evidence shows it was not immediately necessary for Appellant to use deadly force to defend himself against the victim's words alone. We conclude the State presented sufficient evidence for a rational jury to have found the essential elements of

---

[6] The contradictory evidence on whether Appellant reasonably believed he needed to protect himself from the victim's use or attempted use of deadly force was for the jury to resolve and it did so by rejecting Appellant's defensive evidence. *Braughton*, 569 S.W.3d at 609.

murder beyond a reasonable doubt and to reject Appellant's claim of self-defense beyond a reasonable doubt. The jury did not act irrationally in reaching its verdict. Issue two is overruled.

**ISSUE THREE—JURY CHARGE ERROR**

Appellant alleges charge error by the inclusion of a paragraph highlighting his status as a trespasser when the evidence showed he had Alicia's permission to occasionally be on the property. He asserts the jury was charged with inapplicable law which constituted an impermissible comment on the weight of the evidence. We disagree.

At the State's request, the trial court included the following paragraph in the jury charge:

> A person in lawful possession of land or tangible, movable property is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property.

*See* TEX. PENAL CODE ANN. § 9.41(a). While Appellant acknowledged the victim was in lawful possession of the property because he lived with Alicia, he objected to inclusion of the paragraph on the ground there was no evidence that he had trespassed onto Alicia's property. The trial court responded that "well, if they don't believe it's trespass, then I guess they don't have to worry about that particular paragraph . . . ."

The trial court must maintain neutrality in providing jury instructions and guidance. *De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019). To comply with neutrality, the Texas Code of Criminal Procedure requires for a jury charge:

10

(1) to be in writing;

(2) distinctly set forth the law applicable to the case;

(3) not express any opinion on the weight of the evidence;

(4) not sum up the testimony; and

(5) not discuss the facts or use any argument in the charge calculated to arouse the sympathy or excite the passion of the jury.

TEX. CODE CRIM. PROC. ANN. art. 36.14.

Relying on *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008), Appellant asserts the trial court's instruction is an impermissible comment on the weight of the evidence which created confusion for the jury. In *Bartlett*, the Court explained the following three circumstances under which a trial court may single out a particular item of evidence in the charge without signaling to the jury an impermissible view of the weight of that evidence:

(1) the trial court may specifically instruct the jury when the law directs it to attach "a certain degree of weight," or only a particular or limited significance, to a specific category or item of evidence;

(2) the Legislature has expressly required the trial court to call particular attention to specific evidence in the jury charge when the law specifically identifies it as a predicate from which a jury may presume the existence of an ultimate or elemental fact; and

(3) the trial court may instruct the jury with respect to evidence that is admissible contingent upon certain predicate facts that it is up to the jury to decide.

270 S.W.3d at 151. An instruction that singles out a particular piece of evidence, but does not serve one of the legally authorized purposes set out above, risks impinging upon the "independence of the jury in its role as trier of facts . . . ." *Id.* at 151–52.

11

Appellant asserts his presence at Alicia's residence at the time of the incident while with their daughters did not constitute a trespass. He testified he "always had her consent" to be on the property and had never forbidden him from being there. He argues the complained-of paragraph "gave special attention to [the victim's] rights to the property."

Generally, the trial court should avoid including non-statutory instructions in the charge which may constitute an impermissible comment on the weight of the evidence. *De La Torre*, 583 S.W.3d at 617–18. The Court of Criminal Appeals has warned against an instruction which (1) is not grounded in the Penal Code, (2) is covered by the general charge, and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or defense. *Hervey v. State*, No. PD-1101-19, 2024 Tex. Crim. App. Unpub. LEXIS 179, at *15 (Tex. Crim. App. May 1, 2024) (citing *Walters v. State*, 247 S.W.3d 204, 212 (Tex. Crim. App. 2007)).

Here, the instruction was grounded in section 9.41(a) of the Penal Code. It was not previously covered by the general charge, and it did not focus the jury's attention on a specific type of evidence that supported an element of murder or an element of self-defense under section 9.31(a) of the Penal Code. The evidence demonstrated the victim was in lawful possession of the property and that Appellant accessed Alicia's driveway via a closed gate. Alicia testified she did not invite Appellant onto her property nor was there any reason for him to open the gate and enter her property. The instruction did not confuse the jury; rather it aided in a determination of whether the victim was justified in using force against Appellant to remove him from the property. Viewing the charge in its entirety, we conclude inclusion of the objected-to paragraph was not erroneous. Finding

12

no error, we need not engage in a harm analysis for "some harm" under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  Issue three is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


Alex Yarbrough
Justice

Do not publish.

Quinn, C.J., concurring in the result.